The Procter & Gamble Defense Corporation and
The Travelers Insurance Company,

*v.*

Leonard B. West.

(*Jackson,* April Term, 1957.)

Opinion filed February 6, 1958.

Robert P. Adams, Trenton, for plaintiffs in error.

Harrell & Nowell, Trenton, Currie Drake, Milan, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a workmen's compensation case wherein the employer and its insurer appeal from a judgment awarding employee, West, compensation based upon a finding of forty percent permanent partial disability to the body

as a whole. Although the record contains more than 400 typewritten pages, it will, of course, be unnecessary to consider the testimony further than to ascertain whether there is any substantial evidence to sustain the finding of the Court. In part, that finding is this:

"The court finds that the petitioner sustained an injury arising out of and in the course of employment, on November 28, 1955, which injury aggravated his old back condition. This finding is based on the testimony and observation by the court of the petitioner; upon the fact that he reported the next morning to his family physician; that he reported to the company doctors on December 13 following; on the testimony of members of his family and some of his neighbors as to his physical condition prior and subsequent to November 28, 1955; upon the fact that the undisputed proof shows that the petitioner was a consistent worker with a good work record from 1951 until the date of the occurrence of the aggravated injury on November 28, 1955, without any complaint as to his back condition; and finally upon the fact that all the medical proof indicates symptoms of low back pains and injury for a short period immediately following November 28, 1955.

"The petitioner testified that he was still suffering pain and is unable to chop and bring in wood for the fire, and cannot engage in any gainful occupation of which he is capable. The Court observed this man well during two days of hearing. He carried himself in a stiff or strained position. His actions were slow and deliberate. His facial expressions evidenced physical discomfort. Members of his family and neighbors

identified him as a regular worker prior to the date of his injury. The defendants admit that his work record prior to that time, except for two weeks during 1951, was good.

\* \* \* \* \* \*

''The Court must consider all of this direct and circumstantial evidence and weigh it along with the medical proof. From a full and fair investigation of all this evidence, it is reasonable to conclude that petitioner's recovery was not complete within the time expected, that he is in fact still handicapped some 14 (fourteen) months after the injury, and his present condition is the proximate result of the injury in question, and the court so finds.''

The testimony of Mr. West's neighbors and family supports the Court's finding, as does the testimony of Dr. Jones and Mr. West himself. Mr. West's credibility is attacked to some extent. However, the findings of the Trial Judge settled that question. He saw and observed Mr. West as he testified. Such discrepancies as may appear here and there are not sufficiently material to seriously reflect upon that credibility.

The forty (40%) percent permanent partial disability found by the Court to exist is probably based in part upon the testimony of Dr. Jones. The doctor testified, for instance, as to this:

''Q. 25. Dr. Jones, what would you say now is the percentage of disability of a permanent nature? A. As far as employment for the public, he is totally disabled. As far as light work of some type, he would do a certain amount. Figure him on an hourly basis, the

amount of work he could do for his age, he could probably do fifty or sixty percent of what an average man would do.''

At least the foregoing answer is substantial evidence in support of the Court's finding as to the extent of disability of this man who is fitted only for physical labor.

A few years prior to this accident Mr. West had on two occasions experienced some trouble with his back. This has produced a discussion as to his back condition being due to a degeneration thereof rather than to any injury he received on the occasion on which this suit is based.

■ There is the testimony of Mr. West that he did injure his back that night and there is the testimony of others that until then he had worked regularly and consistently. So, the most favorable view of this matter from the standpoint of the employee is that the accident in question aggravated a previous back injury. ''But if that injury aggravated a pre-existing injury or disease, the disability is nevertheless compensable''. *Rhyne v. Lunsford*, 195 Tenn. 644, 671, 263 S.W.2d 511, 514.

■ W. E. West, brother of petitioner, testified that ''from my observation and what he has told me 'from time to time'' he did not think his brother was able to work at the time of the trial in January, 1957. This was objected to as hearsay evidence based on self-serving statements of petitioner. When objection to that evidence was made the Court admonished the witness to testify only ''from what you observed now''. Thereupon the witness said ''Well I have observed now, I don't think he was able to work.'' Another witness was allowed to express his opinion that Mr. West was in good health

before this accident in November 1955. The action of the Court with reference to each of the above items of testimony is assigned as reversible error. If error at all, it is not sufficient to justify a reversal of the Court's finding.

After the Judge had filed his written findings of fact the defendants made a written request for certain additional findings. This request was declined on the ground that they deal with matters already covered in the original findings or are immaterial, as a matter of law. This action of the Court is likewise assigned as reversible error.

The additional findings requested were with reference to whether West had a fractured disc (1) in 1945, and (2) in 1951, and (3) whether petitioner had stated that his injury in 1955 was non-industrial, (4) whether if West had a ruptured disc in 1945 it was aggravated in 1951, (5) whether West said that he was dissatisfied over his work and that he was not allowed to smoke while at work, (6) that if he worked any more it would have to be in some other department, (7) whether the doctors were of the opinion that he was able to go back to work in April, 1956 and with reference to putting him on lighter work, (8) whether his work was terminated because he refused to return to work in April, 1956; (9) what percent of the 40% permanent partial disability resulted from the original fracture and what percent from the aggravation of that condition; and (10) for how long a period will the aggravation of the pre-existing condition continue.

Since the injured employee is paid for the condition he is in after the last injury it seems immaterial as to how much the 1951 injury aggravated the 1945 injury, or how much the 1955 injury aggravated the 1951 injury. The employer takes the employee as he actually is.

The other findings requested seem to be directed to the credibility of Mr. West, and as to whether he is a malingerer. All that was covered directly or indirectly by the Court's findings.

■ Some ten to eleven months after this injury occurred Mr. West incurred expenses of $214, in bills for doctors and hospitals. He did this without consulting or notifying his employer or the insurer. The action of the Court in adjudging the employer liable for these expenses is assigned as error.

When Mr. West reported his injury to his employer prompt and efficient attention by the employer was given him both as to doctors, hospital, etc. These services continued until March or April, when, according to the opinion of these doctors, Mr. West was able to return to work.

The provision as to the liability of the employer for medical and hospital expenses incurred in treating the employee's injuries is carried at Code Section 50-1004. It provides that the employer shall furnish within certain limitations

"such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required.

The injured employee shall accept the same; provided, that the employer shall designate a group of three (3) or more reputable physicians and surgeons if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician.''

If this statute means what it says then the employer is to ''furnish'' and the employee ''shall accept the same''. This language makes it clear that the intent of the statute was for the employee to certainly do not less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy. Read *Irwin v. Fulton Sylphon Co.,* 179 Tenn. 346, 166 S.W.2d 610.

The Court probably was influenced by this Court's decision in *Atlas Powder Company v. Grant,* 200 Tenn., 617, 293 S.W.2d 180. There, however, personal differences seem to have arisen between the injured employee and the doctor furnished by the employer. But the instant case goes further than that. Months after doctors and services furnished by the employer in the instant case had ended, Mr. West without consulting his employer in any manner incurred these additional expenses. Under these circumstances we do not think that it is an expense which the employer is required to pay under the foregoing statute.

The judgment will be modified so as to eliminate from it this item of $209. As so modified, the judgment is affirmed with costs assessed against the plaintiffs-in-error.