EMERSON ELECTRIC COMPANY, Appellant,

v.

Johnny Clayton FORREST, Appellee.

Supreme Court of Tennessee.

April 26, 1976.

Richard L. Dunlap, III, Dunlap, Dunlap, & Hessing, Paris, for appellant.

Fred Collins, Flippin, Collins & Huey, Milan, for appellee.

## OPINION

COOPER, Justice.

Emerson Electric Company has appealed from a decree of the Chancery Court of Henry County awarding Johnny Clayton Forrest benefits called for under the Workmen's Compensation Act where the employee sustains one hundred percent permanent disability to the right arm. Appellant insists that appellee should be denied benefits due to his refusal to undergo further medical treatment. Appellant also insists it is not liable for payment of medical bills incurred by appellee in seeking medical help from physicians other than those selected by appellant.

There is no dispute as to material facts. Appellee was injured on February 15, 1973, when a piece of metal became imbedded in his right arm. The injury was reported to appellant and appellee was given first aid treatment on-the-job. The next day appellant sent appellee to the Henry County General Hospital where he was treated by Dr. Joe Mobley and was given antibiotics to prevent infection.

On February 21, 1973, appellee was admitted to the hospital suffering from acute gas gangrene in his right arm and underwent surgery to drain the infection.

Appellee returned to work on April 4, 1973, but was unable to perform tasks assigned to him due to severe swelling in his right arm, and quit after working only two or three days. Since leaving appellant's employment, appellee has worked for several firms, but has been constantly plagued by severe swelling in his right arm, which prevents him from satisfactorily performing manual labor.

In May, 1974, appellee was examined and treated by Dr. Robert J. Barnett, an orthopedic surgeon. Dr. Barnett was of the opinion that appellee had a ten percent permanent partial disability to the right arm due to "limitation of motion; the extensive scarring; the dormant infection which probably exists due to the repeated drainage [of the arm]; the atrophy of the

forearm; [and] the general weakness of his arm."

In January, 1975, appellee was also examined by Dr. Leland M. Johnston, a specialist in internal medicine, who testified that appellee had edema in the right forearm and that it was due to a blockage of the lymphatics by scar tissue from the operation and drainage necessitated by the gas gangrene. The condition was described as "lymphedema" which, according to Dr. Johnston, "is blockage of lymphatics and fluid accumulates because of blockage distal to blockage. It is similar to milk-leg except most milk-leg is caused by a blockage of veins whereas this is blockage of lympatics." Dr. Johnston expressed the opinion that since the scar tissue has been present for three years there was no effective medical procedure to correct the condition, and that appellee has "a 70% to 100%" permanent disability to the right arm.

After receipt of this testimony, and on motion of appellant, appellee was examined by Dr. Joe Mobley, the treating physician furnished by the appellant. Dr. Mobley testified he saw no evidence of lymphedema whatever; that there was evidence of gas accumulation in the tissues but not fluid accumulation; and that in his opinion the gas was due either to some type of "real low grade, simmering, anaerbic infection that produces gas or . . . that it was put in there with a needle." He also stated that he would not be the least surprised if appellee was a malingerer. He went on to say that if the gas was due to an infection, it was possible that the source of the infection could be identified and that it could be combated by antibiotics.

On filing Dr. Mobley's deposition, appellant moved to have the chancellor order plaintiff to submit to further medical treatment, or in the alternative, to dismiss appellee's action. The chancellor granted the motion to have appellee submit to further medical treatment "on the condition that defendant agree to pay [appellee] temporary total [disability] benefits from May of 1973, through the present time and if defendant agreed to pay immediately all past

medical bills and future medical bills." The chancellor also found that appellee had a permanent disability of 100 percent to the right arm as the result of the on-the-job injury which occurred on February 15, 1973.

T.C.A. 50–1004 provides that:

"If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."

The statutory requirement that the employee undergo medical treatment for an on-the-job injury is predicated upon the employee's need of treatment and the probability that it will be of material assistance in reducing the disability without serious suffering by or danger to the employee. *See Hughes v. All Weather Insulation Co.,* 216 Tenn. 722, 394 S.W.2d 638 (1965); *Sullivan v. Green,* 206 Tenn. 42, 331 S.W.2d 686 (1959); *Russell v. Virginia Bridge Co.,* 172 Tenn. 268, 111 S.W.2d 1027 (1938). And, where under the statute the employee is required to undergo medical treatment, the order that he do so is not to be conditioned upon any act of the employer except that the employer provide competent medical services at its expense.

The chancellor then was in error in ordering the appellee to submit to further medical treatment only on condition that the appellant pay temporary total disability benefits to appellee for a described period of time and agree to pay all past and future medical expenses. However, this error does not materially affect the outcome of the action in view of conflicting evidence of medical causation of appellee's disability and the finding by the chancellor that appellee has a permanent partial disability of 100 percent of the right arm. The chancellor's finding of disability indicates that he accepted Dr. Johnston's testimony that appellee's disability was due to lymphedema. It is undisputed in the record that at this late date, there is no effective medical pro-

**346** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

cedure to correct this condition. Consequently, there is no reasonable basis in the record for the chancellor to order appellee to undergo further medical treatment and no penalty can devolve on appellee for failure to undergo further medical treatment. See *Kingsport Silk Mills v. Cox*, 161 Tenn. 470, 33 S.W.2d 90 (1930).

Appellant also questions the chancellor's order that it pay medical bills of the Chesemore Clinic, Dr. Barnett, and the Jackson Clinic (Dr. Johnston) for examination and treatment of appellee. T.C.A. 50–1004 provides that the employer shall furnish within certain limitations

> "such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required; . . . The injured employee shall accept the medical benefits afforded hereunder; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; . . ."

▆▆ In *Proctor & Gamble Defense Corp. v. West*, 203 Tenn. 138, 310 S.W.2d 175 (1958), it was pointed out that "the intent of the statute was for the employee to certainly do not less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it." And where the employee incurs medical expenses on his own, the employer is not liable for payment of the expenses absent a showing by the employee that he had a reasonable excuse for not consulting with his employer before incurring the expenses. *Rice Bottling Company v. Humphreys*, 213 Tenn. 8, 372 S.W.2d 170 (1963). It is undisputed in the record that appellee incurred the controverted medical expenses without ever having expressed dissatisfaction with the

medical treatment furnished by appellant and without prior consultation with or authorization by appellant. Further, the record is silent as to the reason why appellee did not consult with appellant. Absent such a showing, the chancellor erred in ordering appellant to pay the controverted medical expenses.

The decree of the chancellor ordering appellant to pay the controverted medical expenses is reversed; otherwise, the decree is affirmed. Costs will be paid by appellant.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.