**Cherry E. BUCHANAN,**
**Plaintiff-Appellee,**

v.

**MISSION INSURANCE COMPANY,**
**Defendant-Appellant.**

Supreme Court of Tennessee,
Western Section, at Jackson.

July 14, 1986.

Henry T.V. Miller, McDonald, Kuhn, Smith, Miller and Tait, Memphis, for defendant-appellant.

John W. Palmer, Dyersburg, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This Workers' Compensation appeal involves the sole issue of "whether the employee, having accepted the offered medical treatment ... but feeling the need of further medical aid, was justified in incurring the expense of additional medical services. A correct answer depends upon careful consideration of the particular circumstances surrounding such action." *Tom Still Transfer Co., Inc. v. Way*, 482 S.W.2d 775, 776 (Tenn.1972). We find it necessary to remark that, while each of these cases does depend on its circumstances, the statute involved provides for certain procedures regarding medical treatment of compensable injuries and should be followed generally as a matter of course. Ordinarily, the requirements of the statute do not impose unreasonable burdens on either the employer or the employee. In pertinent part, T.C.A. § 50–6–204(a) provides that the employer shall furnish such medical care as is reasonably required for a compensable injury and that:

> "(4) The injured employee shall accept the medical benefits afforded hereunder; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons ... from which the injured employee shall have

the privilege of selecting the operating surgeon or the attending physician...."

Subsection (d) (6) goes on to state that: "If the injured employee refuses ... to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."

The requirements of this statute impose concomitant duties on the employer and employee. The duty of the employer to furnish medical services depends generally on the duty of the employee to give timely notice of the injury as provided in T.C.A. § 50-6-201. The employee has the duty to accept medical services from the employer's designated physicians under T.C.A. § 50-6-204(a)(4), but the employee also has the statutory privilege of choosing from among at least three such physicians. Nevertheless,

"[t]his Court has refused to hold that in every instance the failure of the employer to furnish a panel of doctors renders the employer liable for expenses for doctors chosen by the employee. *See Employers Insurance of Wausau v. Carter,* 522 S.W.2d 174 (Tenn.1975). Whether an employee is justified in seeking additional medical services to be paid by the employer without consulting him depends upon the circumstances of each case. *Rice Bottling Co. v. Humphreys,* 213 Tenn. 8, 372 S.W.2d 170 (1963)."

*Harris v. Kroger Co., Inc.,* 567 S.W.2d 161, 163 (Tenn.1978). No dispute exists concerning the compensable nature of Plaintiff's injury. Defendant has admitted that Plaintiff is entitled to medical services and to disability payments, but Defendant argues that Plaintiff was not justified in abandoning the medical services provided to her after her injury on December 11, 1983, and thus that the trial court improperly awarded such amounts to her. Accordingly, we examine the relevant facts of this case.

Plaintiff was employed by Nucare Convalescent Center (Nucare) in Dyersburg, Tennessee, as a Nurse's Aide for well over a year prior to her injury. In April of 1985, the time of trial, she was 34 years old. She is divorced and has one child. She has a ninth grade education with no other educational or vocational training than as a Nurse's Aide. Her duties at Nucare included moving patients and, during an episode of lifting one of the patients, she injured her back. Since December 11, 1983, was a Sunday, after notifying her supervisor of her injury, Plaintiff was eventually sent by her supervisor to the Emergency Room at Parkview Hospital in Dyersburg. The emergency room physician referred her to an orthopedic surgeon, Dr. Lyerly, who hospitalized Plaintiff at Parkview and obtained the neurological consultation of Doctors Weems and Canale, both of Memphis. Dr. Canale recommended that Plaintiff be hospitalized at Methodist Hospital in Memphis for more extensive testing. She remained at Methodist Hospital from December 31, 1983, to January 15, 1984, when she was discharged under the care of Dr. Canale. She continued to see Dr. Canale periodically until February 9, 1984, when Dr. Canale gave Plaintiff a light duty work release slip. Dr. Canale testified in his deposition that he indicated on this slip that Plaintiff was restricted to lifting no more than 25–30 pounds and that she remained under his care and was to return to see him in a month. Although Plaintiff testified that she understood by this that she was to return to Dr. Canale as needed, Dr. Canale testified that she had not been discharged from his care at that time, but he also testified that he had no further treatment for Plaintiff's condition when he released her for light duty work as of February 13, 1984.

Upon returning to Nucare with the light duty work release, Plaintiff was told that she would be contacted when a decision as to whether she would be allowed to resume work had been made, but she was never contacted by a representative of Nucare. Subsequently, Plaintiff again approached

Nucare seeking to go back to work; she was then told that no light duty jobs were available. Upset by this refusal, Plaintiff sought the services of an attorney, filing suit on March 7, 1984, to recover her Workers' Compensation benefits. At the same time, she was also experiencing continued pain in her back.

Despite the instructions of Dr. Canale to return to see him, without any notification to her employer, and without any expression to her employer or to Dr. Canale of her dissatisfaction with the services of the doctors she had seen previously, on February 29, 1984, Plaintiff went to see Dr. R. J. Barnett of Jackson, Tennessee, to obtain further treatment for her back injury. She testified that one reason she went to see Dr. Barnett was that he did not require immediate payment for his services. As a result of his examination, Dr. Barnett placed Plaintiff in the Jackson-Madison County General Hospital on March 1, 1984, where she remained until March 20, 1984. During this period and on the recommendation of a neurosurgeon brought in for consultation by Dr. Barnett, surgery was performed on Plaintiff's back on March 3, 1984. Several more occasions of hospitalization followed while she was under Dr. Barnett's care. The medical expenses incurred by Plaintiff were $2,440.00 for Dr. Barnett's services, $11,468.11 at the Jackson-Madison County Hospital, and $487.18 for prescription drugs for a total of $14,395.29.

■ At no time from the date of her accident until the last occasion on which she spoke to a Nucare representative was Plaintiff ever given a choice from among three designated physicians. While a designation list may have been posted at Nucare, this of itself does not comply with the employer's statutory duty to provide the employee with a choice of physicians, especially under circumstances requiring emergency care.

"Although a list of approved doctors was posted on a company bulletin board, plaintiff was not given an option as to which of the ... doctors on the list he

could select, but rather, he was transported by the company nurse to see [a doctor] without being given any choice in the matter."

*Bond v. American Air Filter,* 692 S.W.2d 638, 641 (Tenn.1985). Regardless, her employer's noncompliance with the statute cannot, standing alone, obviate the employee's duty to accept the medical services of one of the employer's designated physicians. *Harris v. Kroger Co., Inc., supra.* Nor does Plaintiff's need for further medical treatment relieve her of this duty. "We need to keep in mind the question is not whether employee needed further medical service, but whether employee was justified in obtaining further medical services, without consulting employer, yet expecting employer to pay for same." *Rice Bottling Co. v. Humphreys, supra,* 213 Tenn. at 13, 372 S.W.2d at 173. She had the right to make a choice from the list of designated physicians, but she did not give the employer an opportunity to comply with the statute.

■ We recognize that the Workers' Compensation Law is a remedial statute, T.C.A. § 50–6–116, but as Justice Neil pointed out in his dissent in *Atlas Powder Co. v. Grant,* 200 Tenn. 617, 625, 293 S.W.2d 180, 183–184 (1956):

"Both the employer and employee are confined to the express provisions of the statute.... the Legislature had it in mind that before an employer should be onerated with a heavy surgeon's fee ... he should be consulted and given an opportunity to comply with the statute. Of course, he could not arbitrarily refuse any request made by the employee. A liberal construction of this Statute is not authorized so as to create duties, rights and liabilities which do not exist."

We too are bound by the express terms of the statute. Nothing in this record reveals any sufficient justification for Plaintiff's unilateral abandonment of the medical services that her employer was required to provide. At the least, she could have notified Nucare that she was not obtaining relief from the only doctor to whom she

had been referred to allow Nucare the opportunity to comply with the statute.

"The inference can be reasonably drawn that it would not have been difficult for the employee to have consulted with his employer concerning additional medical care. Finally, there is no evidence of any discord or disagreement between the employee and the physician ... the employee simply felt that he was not receiving adequate medical treatment for his injury."

*Tom Still Transfer Co., Inc. v. Way, supra,* 482 S.W.2d at 777. If Nucare had not complied at that time, then Plaintiff's case for justification would have been significantly strengthened. T.C.A. § 50–6–204 "makes it clear that the intent [of the Legislature] ... was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy." *Procter & Gamble Defense Corp. v. West,* 203 Tenn. 138, 145, 310 S.W.2d 175, 178 (1958) (citation omitted). *See also, e.g., Greenlee v. Care Inn of Jefferson City,* 644 S.W.2d 679 (Tenn.1983); *Emerson Electric Co. v. Forrest,* 536 S.W.2d 343 (Tenn.1976); *Ward v. North American Rayon Corp.,* 211 Tenn. 535, 366 S.W.2d 134 (1963); *Irwin v. Fulton Sylphon Co.,* 179 Tenn. 346, 166 S.W.2d 610 (1942).

■ Plaintiff's reliance upon cases of exceptions to the statutory requirements is wholly misplaced. In particular, in *Bond v. American Air Filter, supra,* the employee was receiving inadequate medical care and consistently informed the employer of his dissatisfaction. There the employer also failed to comply with the statutory designation of physicians, but in the context of the circumstances in *Bond,* the determinative factor in that case was not the employer's statutory noncompliance. The combination of inadequate treatment, the employee's notification to the employer of his dissatisfaction with the treatment, and the employer's noncompliance, among other circumstances, justified the employee's resort to his own physician. Further, a showing of a difference in professional opinions between the employer's physician and that of the employee, without more, does not prove that Plaintiff was receiving inadequate care from the employer's doctor. As noted above, since each of these cases depends on the circumstances, no general rule governing these situations can be gleaned from the cases of exceptions; moreover, the cases construing T.C.A. § 50–6–204 suggest several alternatives when a problem of this nature arises:

"It is our view that petitioner had a duty to consult with one of the designated physicians.... If thereafter unsatisfied with that physician's findings, petitioner may, generally speaking, (1) move the court to appoint a neutral physician ... (2) consult with his employer and make other arrangements ... or (3) go to a physician of his own choice, without consulting with the employer, and thus be liable for such services."

*Consolidation Coal Co. v. Pride,* 224 Tenn. 188, 199, 452 S.W.2d 349, 354 (1970). Furthermore, despite Nucare's initial failure to comply with T.C.A. § 50–6–204(a)(4),

"[w]e are not agreeable to placing the decision of this question solely on the fact `that the employer did not comply with this provision of the law and thus leave it open to any employee to act on his own initiative under all the circumstances in quitting the doctor assigned him by the employer and then switching over without notice to the employer to another doctor."

*Holston Valley Community Hospital v. Dykes,* 205 Tenn. 336, 343, 326 S.W.2d 486, 489 (1959). *See also Pickett v. Chattanooga Convalescent and Nursing Home, Inc.,* 627 S.W.2d 941, 944 (Tenn.1982). We certainly do not mean to imply in any way, however, that employers are relieved of their statutory duties under T.C.A. § 50–6–204.

We have made an extensive examination of the cases regarding employer liability for unauthorized medical services in such circumstances, and, while we take no pleasure in the harsh result of this case—especially where Plaintiff would otherwise have been compensated, we can find no case that supports the trial court's decision. "In the present action, the Plaintiff admitted she failed to give notice to the Defendant before incurring the additional medical expenses, and she has presented no evidence of circumstances which might relieve her of that duty." *Greenlee v. Care Inn of Jefferson City, supra,* 644 S.W.2d at 680. *See, e.g., Bond v. American Air Filter, supra; Pickett v. Chattanooga Convalescent and Nursing Home, Inc., supra; Goodman v. Oliver Springs Mining Co., Inc.,* 595 S.W.2d 805 (Tenn.1980); *Burlington Industries, Inc. v. Clark,* 571 S.W.2d 816 (Tenn.1978); *Harris v. Kroger Co., Inc., supra; Emerson Electric Co. v. Forrest, supra; Forest Products Division v. Collins,* 534 S.W.2d 306 (Tenn.1976); *Employers Insurance of Wausau v. Carter,* 522 S.W.2d 174 (Tenn.1975); *Tom Still Transfer Co., Inc. v. Way, supra; Consolidation Coal Co. v. Pride, supra; Moyers v. Oman Construction Co., Inc.,* 223 Tenn. 449, 446 S.W.2d 684 (1969); *Ward v. North American Rayon Corp., supra; Rice Bottling Co. v. Humphreys, supra; Holston Valley Community Hospital v. Dykes, supra; Procter & Gamble Defense Corp. v. West, supra; Atlas Powder Co. v. Grant, supra; Atlas Powder Co. v. Grimes,* 200 Tenn. 206, 292 S.W.2d 13 (1956); *Irwin v. Fulton Sylphon Co., supra.*

Accordingly, we reverse the order of the trial court regarding liability for the disputed, unauthorized medical bills. The remainder of the judgment was not subject to appeal and has thus become final. The costs of this appeal are taxed to Appellee.

FONES, HARBISON and COOPER, JJ., concur.

BROCK, C.J., dissents without opinion.