

FILED

November 24, 2014

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Sean Vance East**

**EMPLOYER: Heritage Hosiery Mill**

**CARRIER: Employer's Preferred Ins. Co.**

**DOCKET #: 2014-01-0009**
**STATE FILE #: 71607-2014**
**DATE OF INJURY: September 4, 2014**

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Sean Vance East (Employee). On October 24, 2014, Employee filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, pursuant to Tennessee Code Annotated section 50-6-239(d), to determine if the provision of medical and temporary disability benefits is appropriate.

A telephonic Expedited Hearing was conducted by the undersigned Workers' Compensation Judge on November 13, 2014. Employee was unrepresented at the Expedited Hearing, while Employer (Heritage Hosiery Mill) was represented by its attorney, Charles Poss. Considering the positions of the parties, the applicable law, all evidence submitted at the Expedited Hearing, and the entire record in this claim, the Court hereby finds that Employee is entitled to the medical benefits requested. The Court further finds that Employee is not entitled to the temporary disability benefits requested.

## ANALYSIS

### Issues

1. Whether Employee suffered an injury by accident which arose primarily out of and in the course and scope of his employment.

2. Whether Employee is entitled to medical benefits.

3. Whether Employee is entitled to temporary partial disability benefits.

1

## Evidence Submitted

The following witnesses testified at the Expedited Hearing:

- Employee; and
- Forrest Martin, Employer's plant manager.

The following exhibits were admitted into evidence at the Expedited Hearing:

- Exhibit 1   Certified records of Physician's Care (8 pages);
- Exhibit 2   Affidavit of Forrest Martin;
- Exhibit 3   Recorded statement of Employee (24 pages);
- Exhibit 4   Personnel records maintained by Employer;
- Exhibit 5   Job description;
- Exhibit 6   Wage Statement documenting wages earned by Employee; and
- Exhibit 7   Wage Statement documenting wages earned by similarly-situated employee.

The Court designated the following as the technical record in this claim:

- Petition for Benefit Determination filed September 29, 2014;
- Dispute Certification Notice filed October 20, 2014;
- Request for Expedited Hearing filed October 24, 2014;
- Employee's position statement dated October 24, 2014; and
- Employer's position statement dated October 13, 2014.

The Court did not consider attachments to the above filings unless admitted into evidence at the Expedited Hearing. Additionally, the Court considered factual statements in the above filings as allegations unless proven by the admitted evidence.

## History of Claim

This claim arises from a neck, left shoulder, and left arm injury which allegedly occurred September 4, 2014, the last date Employee worked for Employer. Employee alleges he was injured while lifting boxes of yarn in the course and scope of his employment at Employer's hosiery mill. On September 16, 2014, Employer was provided a panel of providers from which he selected Physician's Care, a walk-in clinic near his home in East Ridge, Tennessee. Employee saw a physician's assistant at Physician's Care on September 16, 2014. Employee was referred to Dr. Peter Lund, an orthopedic surgeon, who is currently providing authorized treatment of his alleged work injury.

Employer has not paid temporary disability benefits because it contends Employee voluntarily quit. Employee asserts that he did not quit, but was sent home by Employer's plant manager when he raised concerns that the lifting required to perform his job might reinjure his pre-existing hernias. Employee filed a Petition for Benefit Determination seeking the medical

2

and temporary disability benefits to which he alleges entitlement under the Tennessee Workers' Compensation Act.

Employer also challenges whether Employee was injured primarily in the course and scope of his employment with Employer because he did not report his alleged injury until four (4) days after he quit his job. It additionally contends that the Physician's Care records establish that Employee admits his left arm pain began after he last worked for Employer.

## Employee's Contentions

Employee contends he injured his neck and left upper extremity on September 4, 2014 while lifting boxes of yarn in the course and scope of his employment with Employer. Employee asserts he gave Employer notice of his injury to Employer's plant manager, Forrest Martin, on September 4, 2014. Employee argues that he is entitled to temporary disability benefits because the authorized treating physician's assistant has restricted his activities due to his work-related injury.

Employee denies that he voluntarily quit his job with Employer. Employee contends that, after he told the plant manager that he was concerned the lifting required by the job might reinjure his surgically-repaired hernias, the plant manager told him to go home. He asserts he clocked out in compliance with the plant manager's instructions, but never stated he was resigning his position with Employer.

## Employer's Contentions

Employer's plant manager denies Employee told him on September 4, 2014 that he injured his arm on the job. Employer argues that, had Employee been injured as he alleges, he would have given notice of his injury in the conversation with its plant manager on September 4, 2014. As additional support for its position that Employee was not injured on the job, Employer claims Employee told the authorized treating physician's assistant that his left arm did not begin hurting until the day after he last worked for Employer.

Employer argues that, if this claim is found to be compensable, Employee is not entitled to temporary disability benefits because he voluntarily resigned. Employer's plant manager contends that, on September 4, 2014, Employee quit because he was concerned that the lifting the job required might reinjure his surgically-repaired hernias. The plant manager claims Employee asked him what he should do and was told to do what was best for him. At that point, Employee allegedly clocked out, left the premises, and did not return.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, a workers' compensation judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l*

3

*Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6). Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

*Factual Findings*

Upon consideration of the witness testimony, the exhibits introduced by the parties, the argument of counsel, and the entire record in this claim, the Court makes the following factual findings:

- Employee sustained an injury to his neck and left upper extremity on September 4, 2014 while lifting boxes of yarn in the course and scope of his employment;
- Employee voluntarily resigned his employment with Employer on September 4, 2014 because he was concerned that he might reinjure surgically-repaired hernias while performing the lifting required to execute the duties assigned by Employer; and
- Employee has not been totally disabled as a result of the neck and left upper extremity injury he sustained September 4, 2014 in the course and scope of his employment with Employer.

*Application of Law to Facts*

*Causation*

Under Tennessee law, the injured worker must prove his injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13). In *Hill v. Eagle Bend Mfg.. Inc.,* 942 S. W. 2d 483 (Tenn. 1997), the Tennessee Supreme Court held an injury arises out of and in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of employment.

The evidence admitted in this claim establishes that Employee has consistently reported that he injured his left shoulder and arm while lifting boxes of yarn in the course and scope of his employment. Employer's plant manager testified that, on September 8, 2014, Employee called him and told him he hurt his shoulder or arm while lifting on his job with Employer. (Exhibit 2, page 2). When he completed the in-take sheet at Physician's Care on September 16, 2014, Employee wrote that he was injured "while lifting boxes of yarn 80-100 lbs." (Exhibit 1, page 1). Later on September 16, Employee gave a recorded statement to a representative of Employer's workers' compensation carrier. In that statement, Employee asserted that he had to seek help from a supervisor while lifting and stacking boxes of rubber yarn "cause I had, you know, I felt a little tenderness, like if you pull a muscle or something in your arm, ah, get that little Jell-O feeling." (Exhibit 3, page 9).

In considering whether Employee has established his alleged injury is compensable, Employer asks the Court to consider what it contends are discrepancies in Employee's conduct

4

and statements on this issue. Employer first argues that, if Employer had injured his shoulder and arm on the job, he would have reported the injury to Employer's plant manager in the conversation they had about work conditions the last day Employee worked. Employer contends that, when Employee's alleged omission to report his injury the last day he worked is combined with the notation in the Physician's Care records that Employee "started having the [arm and shoulder] pain the night after his last day of work." (Exhibit 1, page 3), the preponderance of the evidence supports a finding that Employee is fabricating his claim that he was injured in the course and scope of employment.

The compensability of this claim is not determined by whether, on the last day he worked, Employee mentioned to Employer's plant manager that he injured his arm. Employee admits the main focus of his conversation with Employer's plant manager on the last day he worked was his concern that the lifting required by the job would cause him to reinjure his surgically-repaired hernias. Employee stated in both his direct testimony and the recorded statement that, when he spoke to Employer's plant manager the last day he worked, he did not think his injury was serious. Employer's plant manager admits that Employee reported his work injury within four (4) days after the last date he worked. (Exhibit 2, page 2). On the basis of the above, the Court finds that the issue of whether Employee mentioned his arm injury the last day he worked is irrelevant to the issue of whether he was injured in the course and scope of employment.

The Court additionally finds Employer's reliance on the Physician's Care records in its argument that Employee's injury is not compensable is misplaced. It is true that the type-written summary of Employee's history contains a statement that Employee's arm pain began after he last worked for Employer. However, the in-take sheet Employee completed the same day the physician assistant recorded the subject statement indicates Employee reported he was injured while lifting boxes of yarn. In the recorded statement, Employee stated that his arm was "sore" when he spoke to the plant manager the last day he worked, but, the next day, he awoke with "tingling" in the arm. (Exhibit 3, page 12). This statement gives context to the information recorded in the Physician's Care records and, when the admitted evidence is considered in its entirety, it is clear that Employee did not tell the physician's assistant at Physician's Care that he injured his arm the day after he last worked for Employer. On the basis of the above-described evidence, the Court finds Employee injured his neck, left shoulder, and left arm in the course and scope of his employment.

*Medical Benefits*

The Tennessee Workers' Compensation Act imposes concurrent rights and obligations on both an employer and an employee in connection with the medical services to which an employee is entitled when he reports a work-related injury. Tennessee Code Annotated section 50-6-204(a)(1)(A) requires that "the employer or employer's agent shall furnish, free of charge to the employee, such [treatment] made reasonably necessary by [a work-related] accident." Tennessee Code Annotated section 50-6-204(a)(4)(A) requires that "the employee shall accept the medical benefits afforded under this section." Tennessee Code Annotated sections 50-6-204(a)(4)(A) through (E) require that an injured employee submit for treatment of his work-related injury by a physician selected from a panel composed of physicians compiled by the

employer.

In *Buchanan v. Mission Ins. Co.,* 713 S. W. 2d 654 (Tenn. 1986), the Tennessee Supreme Court held that an injured employee's duty to give notice is concomitant with an employer's duty to provide reasonable and necessary medical care. Accordingly, when Employee gave Employer timely notice that he sustained an injury in the course and scope of his employment, it was Employer's statutory obligation to provide Employee a panel of physicians.

In this claim, Employer has complied with its obligations to provide Employer authorized medical care. The Court finds that Employee is obligated to continue to provide Employee reasonable, necessary, and related medical care under the terms and provisions of the Tennessee Workers' Compensation Act.

*Temporary Partial Disability Benefits*

Employee's claim for temporary disability benefits is determined by whether he resigned his employment on September 4, 2014, the last day he worked. Under Tennessee law, an injured worker is not entitled to temporary disability benefits if he voluntarily quits his job. *Cotton v. Epsco, Inc.,* 1998 Tenn. LEXIS 363 (Tenn. Workers' Comp. Panel 1998). After considering the testimony of Employee and Employer's plant manager as to the content of the conversation they had just before Employee clocked out on September 4, 2014, the Court finds Employee quit his job because he was concerned the lifting required by the job would reinjure his surgically-repaired hernias. As such, Employee is not entitled to an award of temporary partial disability benefits.

In his direct testimony, Employee admitted that the main reason he approached Employer's plant manager on September 4, 2014 was concern about the lifting required to perform his job. Employee complained to the plant manager that he was not told when hired that he would be required to perform heavy lifting. He also asked if he could get help with the lifting or if jobs were available which did not require heavy lifting. Employee's direct testimony is consistent with the following description Employee gave in his recorded statement as to what he told Employer's plant manager before clocking out on September 4, 2014: "Listen, you know, I can't be, ah, I can't be lifting this kind of stuff on my own. I'll have to have some help." (Exhibit 3. Page 11). Employee admitted that, in the September 4, 2014 conversation with Employer's plant manager, he did not go into detail about his arm injury because, at that time, he thought it was a pulled muscle and "didn't think nothing of it".

Employee and Employer's plant manager testified to slightly different versions of the conversation of September 4, 2014 which culminated with Employee clocking out and not returning to work for Employer. Employee testified he clocked out because the plant manager told him it would be best if he did so in light of his concerns about reinjuring his hernias. The plant manager testified he told Employee to do what was best for him and, immediately thereafter, he clocked out. The most concise summary of the essence of the conversation is found in the recorded statement in which Employee stated that he did not say he quit his job when he clocked out, but the plant manager did not say "you are fired." (Exhibit 3, page 18).

6

The Court finds that the most persuasive evidence on the issue of whether Employee quit his job or was terminated is found in the recorded statement. Employee was asked if he was employed and responded as follows: "Well, I'm unemployed. Ah, I actually, ah, don't work for them [Employer] anymore. Ah, I had left them on September 4, 2014." (Exhibit 3, page 2). On the basis of the admitted evidence described above, the Court finds that Employee quit his job with Employer on September 4, 2014 because he was concerned the requisite lifting would reinjure his hernias.

The records stipulated as evidence above establish that Employee is not totally disabled from working. On each occasion he was treated at Physician's Care, the authorized treating physician's assistant returned Employee to work with restrictions. (Exhibit 1, pages 1, 4 and 7). Accordingly, the Court finds Employee is not entitled to temporary partial disability benefits because he quit his job with Employer for reasons other than disability due to his work-related injury and he has not been medically determined to be totally disabled because of his work-related injury.

**IT IS, THEREFORE, ORDERED** as follows:

1. Employer or its workers' compensation carrier shall continue to provide Employee with reasonable, necessary, and related medical treatment for his left arm and shoulder injuries, as required by Tennessee Code Annotated section 50-6-204, by Dr. Peter Lund. Medical bills shall be furnished to Employer or its workers' compensation carrier by Employee or his medical providers.

2. Employee is not entitled to an award of temporary partial disability benefits.

3. This matter is set for Initial Hearing on December 5, 2014, at 10:00 a.m. Eastern Standard Time.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

<u>Initial Hearing</u>:

An Initial Hearing has been set with Judge Thomas Wyatt, Court of Workers Compensation Claims, on December 5, 2014, at 10:00 a.m. Eastern Standard Time. You must call 615-741-2051 or toll free at 855-747-1721 to participate in the Initial Hearing.

Please Note: <u>You must call in on the scheduled date and time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

ISSUED AND FILED WITH THE COURT OF WORKERS' COMPENSATION CLAIMS ON THE 24TH DAY OF NOVEMBER, 2014.

Judge Thomas Wyatt
Tennessee Court of Workers'
Compensation Claims
540 McCallie Avenue, Suite 600
Chattanooga, TN 37402

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3)

8

business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of November, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| Sean Vance East | | | | | X | Seanlottie@comcast.net |
| Charles Poss, Atty. | | | | | X | Charlie.poss@leitnerfirm.com |

**Thomas Wyatt**
**Workers' Compensation Judge**

9