**FILED**

**November 3, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 8:12 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | |
|---|---|
| Linda Green, | Docket No.: 2016-04-0085 |
| **Employee,** | |
| v. | State File No.: 99072-2015 |
| | |
| **Rogers Group** | |
| **Employer,** | Judge Robert Durham |
| | |
| And | |
| | |
| **Liberty Mutual Insurance Co.** | |
| **Carrier.** | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS
## (REVIEW OF THE FILE)

---

This cause came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by Linda Green pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if Rogers Group is obligated to provide workers' compensation benefits. Pursuant to Rule 0800-02-21-.02(13) (2015) of the Tennessee Compilation Rules and Regulations, Ms. Green requested the Court issue a ruling based on a review of the file without an evidentiary hearing.

On October 17, 2016, the Court sent a Docketing Notice to the parties regarding the contents of the record to be reviewed. (T.R. 10.) Rogers Group objected to the admissibility of medical bills, text messages, pre-employment drug screen results for other potential employers, and medical records from Carthage Family Practice on the basis of hearsay and relevance. (T.R. 11.) Ms. Green did not respond to the objections. Therefore, with the exception of medical records from Carthage Family Practice that were electronically signed by the doctor, the Court sustains Rogers' objections, and those documents, attached as Collective Exhibit 9 for identification, will not be considered by the Court.

1

Thus, in considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes it needs no further information to render judgment.

The first issue is whether Rogers Group has provided sufficient evidence to assert an intoxication defense to Ms. Green's claim pursuant to Tennessee Code Annotated section 50-6-110(c)(1) (2015), and if so, whether Ms. Green is likely to prove by clear and convincing evidence that her intoxication was not the proximate cause of her injury on December 11, 2015. Ms. Green also seeks reimbursement for past medical expenses, additional medical care, and temporary total disability benefits should she establish a compensable claim. The Court holds Ms. Green is likely to prevail at a hearing on the merits with regard to the compensability of her claim; however, she has not established the likelihood of prevailing at such a hearing with regard to unauthorized medical expenses beyond her initial emergent care, or with regard to the extent of her temporary disability following her injury.

**History of Claim**

On December 11, 2015, Ms. Green was working as a dispatcher for Rogers Group, a rock and gravel provider, when she fell approximately eight feet from a catwalk while at a ticket printer box. (Ex. 1.) Ms. Green asserted in her affidavit that she fell through a gap in the platform "that should have had a protection barrier." (Ex. 4.) In any event, Ms. Green suffered serious injuries and was transported by ambulance to Skyline Medical Center.[1] (Ex. 8 at 2.)

On December 13, Ms. Green returned to the emergency room at Skyline complaining of "feeling terrible" and suffering from respiratory insufficiency. (Ex. 8 at 1.) Ms. Green was readmitted to the hospital where she stayed until December 17. (Ex. 8 at 24.) According to the admission report, Ms. Green suffered "multiple right-sided rib fractures and transverse process fractures of her lumbar spine." (Ex. 8 at 1.) She denied alcohol use or drug abuse. *Id.* at 2. While in the hospital, Ms. Green underwent a CT scan of her chest that revealed a right hydropneumothorax that was not present on the study taken on December 11. *Id.* at 7. Dr. Benjamin Tourkow also diagnosed Ms. Green with a pulmonary embolism in her right lung and a partial lung collapse. *Id.* at 1.

While in the hospital, Ms. Green received treatment for her lung conditions as well as medication for her pain. (Ex. 8 at 31.) Upon discharge, Dr. Haile Mezghebe placed Ms. Green on lifting restrictions of three to five pounds and instructed her to wear an LSO brace. Dr. Mezghebe also prescribed home oxygen and pain medication. Because of the pulmonary embolism, Ms. Green was taking Coumadin, and Dr. Mezghebe

---

[1] Neither party produced the emergency room or hospital records from Ms. Green's visit to Skyline on December 11. The information is gleaned from Ms. Green's readmission to Skyline on December 14.

2

instructed her to follow-up with her primary care physician to check her Coumadin levels. *Id.* She also instructed Ms. Green to return in one week.[2]

While at Skyline on December 11, Quest Diagnostics attempted to obtain a urine sample for drug testing but had to cancel the initial attempt because Ms. Green was in too much pain to give it. (Ex. 6 at 5.) Ms. Green provided a urine sample later that evening that Quest used to perform a drug screen. *Id.* at 11. According to the report dated December 21, the initial test revealed 20 nanograms of marijuana metabolites in Ms. Green's system. *Id.* An "MS confirm test level" showed five nanograms of marijuana metabolites. *Id.* According to Dr. Greg Elam, a Medical Review Officer, Ms. Green tested positive for marijuana. (Ex. 6 at 10.) Based on these test results, Rogers Group denied Ms. Green's workers' compensation claim.

As recommended by Dr. Mezghebe, Ms. Green sought additional treatment with her personal care physician, Richard Rutherford, at Carthage Family Practice (CFP) on December 21.[3] (Ex. 9 at 1.) Ms. Green's Coumadin levels were too high for the clinic to test, so she was sent to the hospital. On December 23, Coumadin was restarted, but it was recommended that she see a workers' compensation doctor for follow-up care. (Ex. 9 at 12.) On December 31, CFP noted Ms. Green's workers' compensation claim had been denied, and she was there through her private health insurance for additional testing to monitor her Coumadin levels. (Ex. 9 at 14.) Ms. Green returned on January 18, where Physician's Assistant, Peter Alfano, recorded she was there for "follow-up/recent evaluation of right rib fractures from a fall on 12/11/15. Resulted in secondary pneumothorax and pulmonary embolus." (Ex. 9 at 15.)

Ms. Green continued treatment with CFP, noting improvement on February 18, 2016, and stating she was "ready to return to work as a truck dispatcher." *Id.* at 16. Ms. Green underwent another urine drug screen on February 23, 2016, as a condition to returning to work for Rogers Group. (Ex. 6 at 17.) The test for marijuana again revealed 20 nanograms of marijuana metabolites and was confirmed at five nanograms. *Id.* According to Dr. Calvin Channell, another Medical Review Officer, Ms. Green again tested positive for marijuana. *Id.* Dr. Elam also confirmed this result. *Id.* at 18.

On March 18, Ms. Green returned to CFP complaining of right rib pain when lying down. (Ex. 9 at 19.) She underwent x-rays, which revealed "minimally displaced" right rib fractures from the third through the ninth rib as well as right transverse process fractures at L2 and L3 and possibly L1. *Id.* at 20, 24. She also suffered from mild pleural effusion in her right lung. *Id.* Ms. Green's final visit to CFP was on April 24, 2016. *Id.* at 27. She still complained of pain in her low back and right ribs during activity. *Id.* P.A. Alfano recommended she undergo physical therapy, but noted Ms.

---

[2] The parties did not provide any additional medical records from Skyline.

[3] While Ms. Green primarily saw Physician's Assistant, Peter Alfano, at CFP, Dr. Rutherford reviewed and approved the records as noted by his electronic signature.

Green asserted she could not take time off from her new job to do so. *Id.* at 28. This record constituted the last note provided from CFP.

Ms. Green averred in her affidavit that, "she had witnesses that can testify to her state of mind" on December 11; however, she did not identify them or produce any testimony from them. (Ex. 4.) She also did not testify as to her sobriety at the time of the accident, although she contended that the last time she "was around or did marijuana" prior to the accident was November 25, 2015. *Id.*

Mr. Thomas Oczkowicz, Director of Risk Management and Credit for Rogers Group, testified by affidavit that Rogers Group was an active member of the Tennessee Drug-Free Workplace on December 11, 2015. (Ex. 7.) Mr. Oczkowicz attached a copy of Rogers Group's application and memorandum of acceptance into the Tennessee Drug-Free Workplace program to his affidavit. *Id.*

Ms. Green contends she suffered an injury at work on December 11, 2015, and is entitled to all attendant benefits. Rogers Group does not dispute Ms. Green sustained an injury at work on December 11; however, it contends its membership in the Tennessee Drug-Free Workplace Program and Ms. Green's positive drug screen place the burden on her to prove by clear and convincing evidence that drug usage did not proximately cause her fall, which she is unlikely to do at trial.

**Findings of Fact and Conclusions of Law**

The Court must interpret Workers' Compensation Law fairly, impartially, and by basic principles of statutory construction, favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Ms. Green has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

As stated above, Rogers Group does not contest the fact that Ms. Green suffered an injury at work on December 11, 2015, but instead asserts the affirmative defense that illegal drug usage was the proximate cause of her injury, thus rendering it non-compensable pursuant to Tennessee Code Annotated section 50-6-110(a)(3) (2015). If Rogers Group proves it is likely to establish at trial that, "it has implemented a drug-free workplace" pursuant to statutory and regulatory guidelines, and Ms. Green has a "positive confirmation of a drug as defined in § 50-9-103," there is a statutory presumption that the drug was the "proximate cause of injury." Tenn. Code Ann. § 50-6-110(c)(1) (2015). The burden then shifts to Ms. Green to show she is likely to prevail at trial in rebutting the presumption by "clear and convincing evidence," thus proving the drug use was not the proximate cause of her injury. *Id.*

4

In this matter, Mr. Oczkowicz affirmed by affidavit that Rogers Group was a member in good standing with the Tennessee Drug-Free Workplace program at the time of Ms. Green's injury, and Ms. Green provided no evidence to the contrary. Therefore, if the drug test performed after her accident was in statutory and regulatory compliance, and accurately revealed the presence of marijuana in her system, it would establish the presumption that the proximate cause of Ms. Green's injury was drug usage, which Ms. Green could only counter through clear and convincing evidence. *Id.*

However, the drug test must be performed in compliance with the law in order to create the presumption. Tennessee Code Annotated section 50-6-104(a) (2015) states that "if a covered employer fails to maintain a drug-free workplace program in accordance with the standards and procedures established in this section and in applicable rules, the covered employer shall not be eligible for . . . [a] shift in the burden of proof pursuant to §50-6-110(c)."

Tennessee Code Annotated section 50-6-111(a)(4) (2015) requires the creation of a rule regarding the "minimum cut-off detection levels for alcohol, each drug or metabolites of the drug for the purpose of determining a positive test result." Rule 0800-02-120.03(17) (2016) of the Tennessee Compilation of Rules and Regulations sets out the "prohibited levels" for various drugs necessary to create a "presumptively positive" drug test. For marijuana, the "cut-off level" for an initially screened specimen is fifty nanograms, and for a confirmation specimen the "cut-off level" is fifteen nanograms. *Id.*

According to the lab report from Quest Diagnostics for the urine sample obtained from Ms. Green on December 11, 2015, the initially screened specimen only measured twenty nanograms of marijuana metabolite and the confirmation screen yielded only five nanograms of marijuana metabolite. (Ex. 6 at 11.) Thus, the Court finds the post-accident drug test is insufficient to establish a positive result, thus preventing Rogers Group from establishing a presumption of proximate cause pursuant to Tennessee Code Annotated section 50-6-110(c)(1) (2015). Given the inability to establish this presumption, the Court further holds Rogers Group is unlikely to establish intoxication as the proximate cause of Ms. Green's accident on December 11, 2015; therefore, she is entitled to workers' compensation benefits for any injuries she sustained from the accident. *See* Tenn. Code Ann. § 50-6-110(a)(3) (2015).

While the Court holds Ms. Green is likely to establish she sustained a compensable injury on December 11, 2015, the reasonableness and necessity of the medical expenses she has sustained thus far remains in question. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In this instance, the medical records provided establish Ms. Green suffered multiple rib and lumbar vertebrae fractures as due to her fall on December 11. While the parties did not provide medical records from Ms. Green's initial

5

emergency room visit, documentation from Quest Diagnostics state the first drug screen had to be cancelled because her pain was too great to give a urine sample. Therefore, the Court finds Ms. Green's initial trip to Skyline Hospital's emergency room was reasonable under the circumstances and Rogers Group is required to pay the reasonable and necessary costs associated with this care.

However, with regard to Ms. Green's second trip to Skyline and her readmission to the hospital on December 13, the Court finds she provided insufficient evidence to establish her entitlement to those expenses at this time. While she presumably suffered a pulmonary embolism caused by her rib fractures, no doctor has provided an explicit opinion to this effect, nor has any physician addressed the reasonableness and necessity of a four-day stay in the hospital as a result of her December 11 work-related injury. The same is true for the subsequent care provided by Carthage Family Practice. Therefore, the Court holds Ms. Green has simply not provided sufficient evidence to establish her likelihood to succeed at a hearing on the merits regarding reimbursement for these expenses at this time.

Similarly, Ms. Green failed to provide sufficient evidence to establish the duration of any temporary disability she sustained because of her injury, given that no doctor has provided an opinion in this regard. Therefore, the Court cannot award her temporary disability benefits at this time.

However, Ms. Green is entitled to a panel of physicians from which she may choose an authorized treating physician for any additional care she may require for her December 11 work-related injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). The selected physician may then opine on the reasonableness and necessity of Ms. Green's past medical care as well as the extent of her temporary disability following her injury.

IT IS, THEREFORE, ORDERED:

1. Rogers Group shall pay the reasonable and necessary medical expenses for Ms. Green's emergent care on December 11, 2015.

2. Rogers Group shall provide a panel of physicians from which Ms. Green may choose an authorized physician to provide medical treatment for her work-related injury of December 11, 2015.

3. Issues regarding reimbursement for medical expenses incurred following Ms. Green's initial care on December 11, 2015, and temporary disability benefits are deferred until an authorized physician addresses them.

4. This matter is set for an Initial Hearing on December 12, 2016, at 2:00 p.m. C.S.T.

6

**ENTERED THIS THE 3rd DAY OF NOVEMBER, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 855-689-9049 to participate in the Initial Hearing.

**Please Note:** **You must call in on the scheduled date/time to participate.** Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

7

the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. First Report of Injury
2. Laboratory Report from Quest Diagnostics
3. Report from National Toxicology Specialists
4. Affidavit of Linda Green
5. Wage Statement
6. Notice of Filing Medical Records
7. Affidavit of Thomas Oczkowicz
8. Medical records of Skyline Medical Center
9. Medical records of Carthage Family Practice
10. Medical records and tests unsigned by doctors (for I.D.)
11. Medical Bills (for I.D.)
12. Drug Screen form dated March 4, 2016 (for I.D.)
13. Transcript of various texts (for I.D.)

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion to Dismiss
4. Show Cause Order
5. Order on Show Cause Hearing
6. Request for Expedited Hearing
7. Employer's Response to REH
8. Employer's Motion for Extension of Time
9. Employee's Position Statement
10. Docketing Notice
11. Employer's Objection to Admissibility of Records

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 3rd day of November, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Linda Green | X | | X | P.O. Box 32, Riddleton, TN 37151 cookiejoeg@gmail.com |
| Heather Douglas | | | X | hdouglas@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10