Joe Thomas BOND, Appellee,

v.

AMERICAN AIR FILTER, Appellant.

Supreme Court of Tennessee.

June 17, 1985.

Franklin Murchison, Spragins & Murchison, Jackson, for appellant.

J. Houston Gordon, Michael W. Whitaker, Gordon, Forrester & Whitaker, Covington, for appellee.

## OPINION

FONES, Justice.

This is a worker's compensation case in which the trial court awarded plaintiff temporary total disability benefits, permanent partial disability benefits of 60% to the body as a whole, and medical expenses.

Appellee, Joe Bond, was employed as a forklift operator by American Air Filter on March 10, 1983, when, while transferring approximately 70 pounds of galvanized metal on a pallet, he injured his foot after the material fell across the top of his foot. Bond immediately reported his work-related injury to the company nurse, Ruth Masters, as required by the company rules. After examining Bond's foot, she applied an ice pack for about two hours and told Bond that he could return to work. When Bond attempted to resume his duties, his foot began to swell again, and he requested to see a doctor. The nurse, neglecting to inform plaintiff of his choice of available physicians, took plaintiff to see Dr. Clarey Dowling, a local general practitioner. After examining Bond, Dr. Dowling prescribed pain medication to be taken at night and released plaintiff to return to work, concluding the injury was a minor soft tissue trauma.

On March 25, 1983, Bond again insisted that he needed further medical attention for the persistent pain and swelling that he was experiencing. Mrs. Masters again took Bond to see Dr. Dowling, who continued to express his feelings that the injuries were not significant and that Bond could return to work.

Following his second visit to Dr. Dowling, Bond told the company nurse that he was not satisfied with the treatment provided by Dr. Dowling and requested permission to leave work to see his personal physician, who referred plaintiff to an orthopedic surgeon, Dr. John Janovich.

Doctor Janovich first saw Bond on March 25, 1983, the same date on which plaintiff was examined by Dr. Dowling for the second time. Doctor Janovich's findings on this date, however, sharply contrasted the diagnosis by Dr. Dowling of Bond's injury as a minor soft tissue trauma. Doctor Janovich described the injury as a "crush injury with a lot of soft tissue reactivity secondary thereto." Doctor Janovich testified that he found a large cystic mass on the anterior aspect of the foot near the toes, suggestive of a post-traumatic neuroma, which he defined as an injury to a nerve as a result of compression from soft tissue scarring and fibrous tissue. In addition, he noted a dysfunction or abnormal conduction of the tibial nerve into the medial forefoot and on the plantar or bottom of the foot. Doctor Janovich noted plaintiff's complaint of tenderness over this nerve at the level of the tarsal tunnel, which is a tight sheath enclosing the tibial nerve in the ankle. Doctor Janovich then stated, within a reasonable degree of medical certainty, that the post-traumatic swelling had been responsible for the compression of the tibial nerve in the area of the tarsal tunnel, causally connecting the problems with the back of the foot in the tarsal tunnel with the injury sustained at work.

On this March 25 examination, Dr. Janovich also evaluated plaintiff's complaints of back pain, noting a tenderness in the intervertebral area of the lumbosacral junction

which Dr. Janovich treated with a compressive wrap and a prescription for Naprosyn.

When Dr. Janovich next saw plaintiff on April 1, he observed that Bond's foot was not progressing satisfactorily. Doctor Janovich, therefore, performed additional tests, which, together with the results of nerve-conduction tests administered by Dr. Huffman, a specialist to whom plaintiff was referred by Dr. Janovich, conclusively confirmed that plaintiff did have a tibial nerve entrapment and encroachment at the level of the tarsal tunnel. He thus recommended surgical release of the tarsal tunnel and scheduled plaintiff for this operative procedure.

When Mr. Bond returned to work he advised the company nurse of the scheduled surgery but, later the same day, plaintiff was requested by company management to see another doctor. Mr. Bond agreed and an appointment was scheduled for the next week, causing Bond to postpone the surgery. However, on the date of this scheduled appointment, someone in personnel told plaintiff that his appointment had been cancelled. After he was unable to get an explanation for the cancelled appointment, and still experiencing such pain in his foot that he could barely walk, Bond had the surgical release of the tarsal tunnel performed by Dr. Janovich on April 25, 1983.

Appellant insists that there is no material evidence on which the trial court could predicate an award of disability to the body as a whole. This assertion, however, simply ignores the conclusions of Dr. Janovich, the treating physician and surgeon who operated on plaintiff's foot, whose testimony the chancellor specifically accredited. As stated in *Hinson v. Wal-Mart Stores, Inc.*, 654 S.W.2d 675, 676–77 (Tenn.1983), "it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation."

Here, the chancellor concluded that the testimony of Dr. Janovich was more persuasive than that of Dr. Calandruccio and Dr. Dowling. Doctor Dowling, a general practitioner, acknowledged on cross examination that he could not rule out the possibility of tarsal tunnel syndrome in Bond's foot as a result of the injury sustained at work. He also testified that a definitive diagnosis of this condition required specialized testing and that an orthopedic surgeon would be the appropriate physician to accurately diagnose and treat plaintiff's injuries.

■ Doctor Janovich's findings were contradicted by Dr. Calandruccio, an orthopedic surgeon who had been requested by appellant to independently evaluate plaintiff and who concluded that Bond had only suffered a contusion to the foot which did not result in serious injury. Thus, the chancellor had to choose from conflicting opinions expressed by qualified medical expert witnesses, and it was within his discretion to conclude that Dr. Janovich's opinion should be accepted over those of the other expert and that it contained the most probable explanation in view of the known facts. *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202, 204 (Tenn.1978).

■ There is material evidence to support an award for permanent partial disability to the body as a whole. Doctor Janovich, based upon twenty-three opportunities to observe, six days of hospitalization and surgery, and the results of tests ordered by him as part of the diagnostic and treatment process, testified that the symptoms present in Bond's foot were caused by his work-related injury. Doctor Janovich also stated that plaintiff had complained of back problems since his initial visit and that the back problems were causally connected to the March 10 injury. Doctor Janovich stated that although he initially treated plaintiff's back problems "somewhat conservatively," the condition of Bond's back had progressively deteriorated to the extent that this problem overshadowed the injury to the foot. He further testified that the condition of Bond's foot had aggravated his back problems by creating an abnormal gait problem.

■ Doctor Janovich also testified that Bond needed further surgical procedures

on his foot and that the reason he had not performed these additional procedures was because the insurance company had refused to pay Bond's previous hospital bill. He further stated that Bond's foot and back problems had worsened as a result of this absence of treatment. Doctor Janovich ascribed a permanent partial disability of 40% to the body as a whole, attributing 33% to the back and 7% to the lower extremity. It was also Dr. Janovich's opinion that even if the additional operative procedures were performed on Bond's back and foot that he would have a residual impairment of 20 to 25%. Once the permanency of the injury and causation are established by medical testimony, the extent of such disability may be determined from lay testimony and other evidence as well as from medical evidence. *Kellwood Co. v. Gibson,* 581 S.W.2d 645 (Tenn.1979). Thus, the chancellor's conclusion that plaintiff sustained a permanent partial disability of 60% to the body as a whole is supported by material evidence, and we must affirm.

The employer also insists that the chancellor erred in awarding medical fees because plaintiff violated T.C.A. § 50-6-204(a)(4) when he consulted physicians who were not designated by the employer. Appellant argues that it should not be responsible for the medical expenses incurred when Bond chose to see his own family doctor and the other physicians to whom plaintiff was referred. Although a list of approved doctors was posted on a company bulletin board, plaintiff was not given an option as to which of the five doctors on this list he could select, but rather, he was transported by the company nurse to see Dr. Dowling without being given any choice in the matter. Plaintiff only consulted his family doctor after Dr. Dowling's treatment proved inadequate to relieve his continued pain. The company nurse's statement to Bond that such treatment by a doctor who was not designated by the employer would not be covered by worker's compensation was not sufficient to deny plaintiff the payment of medical expenses. Moreover, referring the employee to a single physician does not comply with T.C.A. § 50-6-204 and constitutes an usurpation of the privilege of the employee to choose the ultimate treating physician. An employer who attempts to claim the benefits of T.C.A. § 50-6-204 must also comply with the statute. *Employers Insurance of Wausau v. Carter,* 522 S.W.2d 174 (Tenn.1975). Considering the circumstances, employee was justified in seeking medical care of his own choosing for which the non-complying employer is responsible.

Appellant also insists, and appellee concedes, that temporary total benefits should have been computed from April 22, 1983, the date on which Bond was ordered to cease working by Dr. Janovich, as opposed to March 10, 1983, the date of injury. In addition, appellant contends that there was no material evidence to support the award of temporary total disability to the date of the decree, August 1, 1984. The case was tried on May 28, 1984, and held under advisement until August 1, 1984. In the entire history of the Workmen's Compensation Act, no case has ever reached this Court with material evidence to support an award of temporary total disability to the date of trial, and material evidence to support an award extending throughout a period during which the case is under advisement is inconceivable. This case is no exception.

In *Gluck Brothers v. Coffey,* 222 Tenn. 6, 431 S.W.2d 756 (1968), the trial judge awarded temporary total disability benefits from the date of the injury to the date of his decree, which included a period of almost seventeen months past the trial date during which the case was held under advisement. The Court held that temporary total disability was that period of time during which the employee is, "recuperating as far as the nature of the injury permits," and that the period terminates when the permanent total or permanent partial disability begins; that the two periods cannot cover the same period of time. *Id.* 431 S.W.2d at 759.

Doctor Janovich's deposition was taken on February 29, 1984. He was asked to give his opinion as to the percentage of permanent partial disability, "at the present time without further treatment." His response was forty percent permanent

disability to the body as a whole. He was then asked to give his opinion of the percentage of permanent partial disability if plaintiff received the recommended treatment, and his response was, "in the vicinity of twenty to twenty-five percent." Those opinions were necessarily based on plaintiff's condition on February 27, 1984, the last time Dr. Janovich saw plaintiff before giving his deposition.

The trial judge's permanent partial disability award of sixty percent was obviously based upon the testimony of Dr. Janovich, which in turn was based upon his evaluation of plaintiff's condition on February 27, 1984. It follows that the period of temporary total disability terminated on that date, and the period of permanent partial disability began on that date.

The period of temporary total disability benefits is modified to begin April 22, 1983, and terminate on February 27, 1984. The remainder of the trial court's decree is affirmed and the case is remanded to that court for any further proceedings. Costs are assessed against defendant.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.