**FILED**

**August 18, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:01 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| Michael Boyd, | ) |
| Employee, | ) Docket No.: 2015-07-0053 |
| v. | ) State File No.: 96497-2014 |
| Revel Logging, LLC, | ) |
| Employer, | ) Date of Injury: December 2, 2014 |
| And | ) Judge: Phillips |
| Forestry Mutual Ins. Co., | ) |
| Insurance Carrier. | ) |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 20, 2015, upon the Request for Expedited Hearing filed by Michael Boyd (Mr. Boyd), the Employee, on June 18, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Revel Logging (Revel) is obligated to provide medical benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Boyd is entitled to some of the requested benefits.

## ANALYSIS

### Issues

1. *Whether Mr. Boyd has established, under the applicable evidentiary standard, that he sustained a vascular injury to his left leg;*

2. *Whether Mr. Boyd is entitled to payment of medical bills related to treatment of the alleged vascular condition;*

1

3. *Whether Mr. Boyd is entitled to further evaluation of his alleged vascular condition; and,*
4. *Whether Mr. Boyd is entitled to further evaluation of his lumbar spine injury.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Medical Records of Dr. Andrew Lundberg;
2. Medical Records of Dr. Ronnie Outen;
3. Medical Records of Dr. Stephen Waggoner;
4. Medical Records of Henry County Medical Center;
5. Medical Records of Orthoworks Therapy;
6. Causation opinion letters to and from Dr. Stephen Waggoner;
7. Causation opinion letter from Dr. Andrew Lundberg;
8. Wage Statement; and,
9. Choice of Physician Form (C-42).

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), March 24, 2015;
- Dispute Certification Notice (DCN), April 29, 2015; and,
- Request for Expedited Hearing, June 18, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

Mr. Boyd provided in-person testimony.

## History of Claim

Mr. Boyd is a forty-seven-year-old resident of Henry County, Tennessee. He works for Revel as a cutting machine operator. On December 2, 2014, Mr. Boyd was loading his cutting machine onto a trailer to move it to another job site. In the process of loading, he missed a step while climbing onto the machine, and his left foot hit the ground from an approximate height of two and one-half feet. He felt immediate pain in his lower back and a sensation of his left leg being "frozen." No one witnessed the accident.

Mr. Boyd completed loading the machine. He then informed his supervisor, Jeff Bryant, that he injured himself and "needed to go to the doctor." He told Mr. Bryant that he felt pain in his back and left leg, and that his left leg felt "frozen." Mr. Bryant

2

telephoned Revel's office to advise that he was carrying Mr. Boyd to the emergency room. Revel's owner, Gary Revel, called Mr. Boyd to say that Mr. Boyd, "would have less of a wait" if he went to the East Wood Clinic (East Wood). Mr. Bryant and Mr. Boyd then proceeded to East Wood after carrying the equipment to the other job site.

Mr. Boyd testified Mr. Bryant told the staff at East Wood that Mr. Boyd was injured while "trying to get onto a machine" and "was having trouble with his leg and lower back." Mr. Bryant also told the East Wood staff that he was a "supervisor," and that Revel would cover Mr. Boyd's treatment under workers' compensation.

Mr. Boyd saw Dr. Ronnie Outen, to whom he reported pain in his "left low back" that "radiates to the left leg." He claimed to have reported his leg was cool but, on cross-examination, could not explain why East Wood's record did not indicate such complaint.

On examination, Dr. Outen found tenderness in the left-lower back and limited range of motion of the back. He diagnosed a lumbar strain and sciatica. Dr. Outen discharged Mr. Boyd and prescribed anti-inflammatory and pain medications. Mr. Boyd testified that Dr. Outen performed "really no testing as if I had gone to a medical center," and Mr. Boyd believed a medical center "would have had more knowledge" about his condition.

The next day, December 3, 2014, Mr. Boyd's wife visited Revel's office. On behalf of her husband, she chose Dr. Waggoner from a panel of physicians. Mr. Boyd testified that she chose Dr. Waggoner because he provided the quickest appointment.

Mr. Boyd first saw Dr. Waggoner on December 5, 2014. He advised Dr. Waggoner that he had "been having trouble with his back since an injury at work on 12/3/2014" when he was "trying to get up into a cutting machine." Mr. Boyd complained of "weakness in the left leg as well as numbness and tingling." Dr. Waggoner diagnosed a lumbar strain and lumbar radiculopathy, and recommended an MRI of the lumbar spine.

Mr. Boyd underwent the MRI and saw Dr. Waggoner on December 11, 2014. Dr. Waggoner noted the MRI showed "no abnormalities." He also noted that Mr. Boyd still complained of low-back pain radiating into the left leg "with numbness and tingling in his left calf." Dr. Waggoner maintained his diagnosis of a lumbar strain and recommended physical therapy.

Mr. Boyd attended an initial physical therapy evaluation on December 16, 2014, and complained of "constant" lower-back pain that radiates to the left foot. He described the pain as a "constant toothache" in the left knee, cramping in the left calf and severe pain in the left foot.

Dr. Waggoner's records indicate that he spoke with Mr. Boyd on December 18,

3

2014, and agreed to "send referral to WC for second opinion with a neurosurgeon." (Ex. 3 at 34.)

Mr. Boyd returned to Dr. Waggoner on December 22, 2014, and stated he was "not any better." He complained of severe left-leg pain "in a stocking glove distribution" and also complained "of a cool feeling in the leg." (Ex. 3 at 36.) Dr. Waggoner noted the coolness of the leg and found it "very difficult to palpate a pulse" in the arteries of the leg. He immediately referred Mr. Boyd to the emergency department of Methodist Hospital in Memphis for evaluation of what he described as a vascular condition.

Mr. Boyd presented to the emergency department as recommended. However, he testified he felt the hospital was "dirty" and he questioned whether he would receive an objective opinion regarding the vascular condition because of comments made by the nurse case manager at Dr. Waggoner's office. Specifically, Mr. Boyd testified that the case manager made clear workers' compensation would cover only the lower-back injury. Thus, he returned to his home in Henry County. Mr. Boyd did testify that he received a voicemail message from the carrier, who stated that the carrier indeed would cover the vascular testing and that the nurse case manager would contact Mr. Boyd regarding scheduling. The case manager did contact Mr. Boyd to advise that the testing would occur in McKenzie, Tennessee on December 26.

On December 25, 2014, Mr. Boyd awoke in the night with extreme pain in his leg. His wife rushed him to Henry County Medical Center. Vascular testing revealed blockage of the left femoral and iliac arteries. Dr. Lundberg performed surgery on December 27, 2014, to remove the blockages. Since that time, Mr. Boyd complains of numbness in his "inner thigh" and down his shin. He walks favoring the left leg.

Following this treatment for the left leg, Mr. Boyd returned to Dr. Waggoner on January 19, 2015. Dr. Waggoner noted that the left leg was "much better now," following the vascular surgery, but that Mr. Boyd still had pain in the leg and low back. Dr. Waggoner's diagnosis remained a lumbar strain; he recommended three weeks of physical therapy. Mr. Boyd, however, did not complete the physical therapy, as he desired to return to work.

On February 25, 2015, Mr. Boyd saw Dr. Waggoner, who noted he was "doing well" and "not having any pain at all in his back." Dr. Waggoner released Mr. Boyd to regular duty. On March 4, 2015, Dr. Waggoner assessed maximum medical improvement (MMI) and assigned a zero percent permanent impairment rating. Mr. Boyd testified that he had back pain both at the time of his release and ongoing.

Following assessment of MMI, the case manager corresponded with Dr. Waggoner. The correspondence *to* Dr. Waggoner is not in evidence but, on March 6, 2015, Dr. Waggoner wrote a letter stating:

4

In my opinion, I do not feel that the patient's lower extremity vascular injury was related to his lumbar strain. Whether his lower extremity vascular thrombosis was secondary to a work injury, I would have to leave that to the expertise of a vascular surgeon. Based on the history that the patient gave me on his initial visit, however, I do not feel that his lower back injury caused the vascular problems for which the patient was treated by Dr. Lundgren. He did, however, have pain and tingling in the lower extremity which I feel was vascular in nature.

I would leave it up to his vascular surgeon whether this could have been caused by his alleged injury when he slipped getting onto his cutting machine. I do not feel that the lumbar strain, which I saw him for on December 5, 2014, could have caused the vascular injury.

On March 11, 2015, Revel's counsel requested Dr. Waggoner's opinion regarding causation of both the vascular condition and the need, if any, for further lumbar spine treatment. After describing the applicable causation standard and reciting the care rendered Mr. Boyd, counsel asked:

In your expert medical opinion, taking into account this patient's health conditions as demonstrated in the above testing results and the surgical findings of Dr. Lundberg, the work injury in question, your evaluation and treatment of the patient, along with any and all other information you feel to be germane, did the incident on December 2, 2014 contribute more than 50% in causing the patient's current vascular symptoms and need for surgery?

Dr. Waggoner replied by checking "NO."

Additionally, counsel inquired:

In your expert medical opinion, is the patient in need of any additional medical treatment for his low back injury following the treatment you provided for his lumbar strain, his MRI results, his recent decision to terminate the physical therapy you ordered and your findings on 2/25/15 resulting in your release of this patient at MMI with no permanent work restrictions?

Dr. Waggoner again replied by checking "NO."

On June 1, 2015, in a letter addressed "To Whom It May Concern," Dr. Lundberg stated:

5

Please be advised in reviewing Mr. Boyd's chart and my office notes as well as my personal memory, Mr. Boyd's course occurred after a fall at work which he discussed apparently with the Workman's Compensation folks at his work. Unfortunately, he had about a three or four week window where nothing was attempted for improvement and unfortunately he continued to have symptomatology and then was subsequently found to have an injury to the common femoral artery. Whether or not this was specifically associated with a traumatic fall and acute dissection at the time, I am not sure anybody could answer unless we had seen him just directly after the fall but given the temporal relationship between the fall and the symptoms, my suspect is that this would be associated with his injury during his duties at work.

Mr. Boyd testified he currently works at Revel from slightly less than forty up to sixty hours per week. He performs the same cutting machine job. He quit smoking on December 25, 2014, and admitted to being a diabetic.

Mr. Boyd, through counsel, filed a PBD on March 24, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on April 29, 2015.

## Mr. Boyd's Contentions

Mr. Boyd contends that his December 2, 2014 injury resulted in the vascular condition in his left leg requiring surgery. He had no problems with his leg prior to missing the step and striking his leg on the ground. Dr. Lundberg opined that, because Mr. Boyd had no prior problems with his leg, the vascular condition was "probably" related to his injury. Dr. Lundberg could not be more specific, because he did not see Mr. Boyd closer in time to the work event, but opined that the lumbar strain and vascular condition are two separate issues. Dr. Waggoner states the vascular condition is not the result of the lumbar strain but defers to a vascular surgeon as to causation of the vascular condition.

Mr. Boyd "justifiably" sought care for the vascular condition on his own, after the case manager indicated the carrier would not accept compensability for it. Therefore, he is entitled to recover the medical bills for such treatment. Further, he is entitled to a panel of physicians for follow-up evaluation and/or treatment of both his lower back and vascular conditions.

6

**Revel's Contentions**

Revel contends that it provided all reasonable and necessary medical care through Dr. Waggoner. During an approved visit, Dr. Waggoner discovered that Mr. Boyd had a vascular deficiency in his left leg because the leg felt cool and Dr. Waggoner could not palpate pulses. Dr. Waggoner suggested that Mr. Boyd follow up with the emergency department at a Memphis hospital for immediate evaluation of the vascular condition. Mr. Boyd opted to return home and later sought care, on his own, from Dr. Lundberg.

Dr. Lundberg opined the vascular condition was "suspect" to being related to the work injury. This opinion does not rise to the required level of proof under the new law. Further, Dr. Lundberg states that he is "not sure anybody could answer" the causation question. (Ex. 7.) As such, Dr. Lundberg's opinion is too speculative to support a finding of causation.

Conversely, Dr. Waggoner opines that the work event "did not contribute more than 50% in causing [Mr. Boyd's] vascular symptoms and need for surgery." (Ex. 6 at 2.) Likewise, Dr. Waggoner did not relate the vascular condition to the lumbar strain. Because Dr. Waggoner is the approved physician, his opinion is presumed to be correct. Therefore, Mr. Boyd has not shown entitlement to benefits for the alleged vascular condition.

Dr. Waggoner also opined that Mr. Boyd needs no further treatment for his lumbar strain. Hence, Revel owes Mr. Boyd no further benefits at this time.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

7

*Factual Findings*

Mr. Boyd sustained an injury arising out of and in the course and scope of his employment when he missed a step while climbing onto a cutter machine on December 2, 2014. He sustained both a lumbar strain and a vascular injury. He received treatment for his lumbar strain, which Revel treated as compensable. He was compelled to seek treatment for the vascular condition on his own and incurred medical bills for that treatment. Mr. Boyd continues to suffer symptoms resulting from the vascular condition and is entitled to further evaluation for the condition.

*Application of Law to Facts*

*Mr. Boyd established a compensable vascular injury to his left leg.*

For injuries on or after July 1, 2014, an employee must show that his injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). This basic definition of injury is expounded upon by the statutory definition of an injury being accidental only if it is caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence, that causes "death, disablement, or the need for medical treatment." Tenn. Code Ann. § 50-6-102(13)(A) (2014). To prove that the injury causes "death, disablement or the need for medical treatment," the employee must show "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(13)(D) (2014).

Because the instant case comes to the Court in the posture of an Expedited Hearing, Mr. Boyd must show that he is likely to prevail at a hearing on the merits in order to recover the requested benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2014). Such being the case, the Court notes the requirement of Tennessee Code Annotated section 50-6-102(13)(B) − that an employee must show by a preponderance of the evidence that the employment contributed more than 50% to the injury− has yet to attach to this interlocutory stage of the proceedings. For now, Mr. Boyd is not required to show by a preponderance of the evidence a 50% or more contribution to the injury by the employment. However, this order should not be construed in any way to either obviate the need for adequate proof of causation at a compensation hearing, or to forestall either party from presenting additional evidence at such hearing to reverse or modify this interlocutory order. *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *4 (Tenn. Work. Comp. App. Bd. Mar. 27, 2015); *cf. McCall v. Natl. Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

8

In *McCord*, the Workers' Compensation Appeals Board explained that not every report of injury by an employee triggers the duty to provide medical care. Instead, "[i]f an employer chooses to deny the claim following its initial investigation, the employee must come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable 'injury by accident' at a hearing on the merits in accordance with section 50-6-239(d)(1)." *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6 at *7. Thus, an employer such as Revel might investigate the claim, issue a denial, and force an employee, such as Mr. Boyd, to come forward with sufficient evidence to show he is entitled to benefits at an expedited hearing.

In this case, the evidence is uncontroverted that Mr. Boyd stepped down from a machine and felt low-back and left-leg pain. It is also uncontroverted that he reported *both* body parts as being injured to his supervisor. The Court reviewed the medical records offered into evidence, and finds the records support Mr. Boyd informing both Drs. Outen and Waggoner that he felt pain and/or discomfort in his left leg when he missed his step and his foot struck the ground. Thus, Mr. Boyd identified a specific incident identifiable by time and place of occurrence, one element of the required proof. The dispositive question concerns whether he has shown an injury that arose primarily out of the employment. For the reasons that follow, the Court finds sufficient evidence that Mr. Boyd will likely prevail at a hearing on the merits.

As argued by Mr. Boyd, the evidence supports a finding that the lumbar strain and the vascular issue are *separate* injuries. As such, the evidence establishes that Dr. Waggoner, in his response to the case manager, defers to the vascular surgeon as to whether the vascular condition "could have been caused by his alleged injury when he slipped getting onto his cutting machine." (Ex. 6 at 4.) Importantly, he also pointed out in that response that Mr. Boyd did "have pain and tingling in the left lower extremity which I feel was vascular in nature." *Id.*

Dr. Lundberg, the vascular surgeon, opines that the "temporal relationship between the fall and the symptoms" causes him to "suspect" that the vascular condition is associated with the work injury. Revel points out Dr. Lundberg's statement that he was "not sure anybody could answer [the causation question] unless we had seen him just directly after the fall." Revel argues this is insufficient proof. Under the evidence as admitted, the Court respectfully disagrees.

The evidence shows no testing for a vascular condition was performed until December 26, 2014, some three weeks after the injury. But, the evidence also shows Mr. Boyd complained of pain, numbness, tingling and cold in his leg before that date. Dr. Waggoner confirmed Mr. Boyd's complaints of pain and tingling (Ex. 6 at 4), and he found the cold temperature of the leg in his own office exam on December 22, 2014.

9

Mr. Boyd testified credibly that he hurt his leg on December 2, 2014, and that he never had issues with the leg prior to that date. This fits with Dr. Lundberg's causation opinion regarding the temporal relationship between the event and the onset of symptoms. A claimant's assessment of his or her physical condition is competent testimony and may not be disregarded. *Uptain Constr. Co. v. McClain*, 526 S.W.2d 458, 459 (Tenn. 1975).

Finally, though Revel suggests other possible contributing factors to the vascular condition such as smoking and diabetes, there is no evidence to date that in any way connects the vascular condition to other predisposing factors. In fact, apart from the injury, there is no evidence of any contributing factor to the vascular condition. Therefore, the only medical evidence of causation is Dr. Lundberg's opinion of the condition being "suspect" to the injury, which, coupled with the lay proof, is sufficient at this stage of the proceedings.

*Mr. Boyd is entitled to reimbursement of medical bills for the vascular injury.*

As stated in *McCord*, "an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice" if the employee does come forward with sufficient evidence to show likely success at a hearing on the merits. *McCord* at *7. Such has long been the law in Tennessee, *see Bond v. American Air Filter*, 692 S.W.2d 638, 641 (Tenn. 1985), and such is true in the instant case. Mr. Boyd has established causation and the need for medical treatment of the vascular condition. Because Revel contested only causation of the injury, and not the reasonableness and necessity of the medical treatment, the Court finds Mr. Boyd is entitled to recover the medical bills for treatment of the vascular issue.

*Mr. Boyd is entitled to further evaluation of his vascular condition.*

Having found sufficient evidence that Mr. Boyd is likely to prevail on the merits regarding causation, the Court also finds that he is entitled to further evaluation of the vascular condition. Tennessee Code Annotated section 50-6-204(a)(1)(a) (2014) requires an employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident." Mr. Boyd required surgery because of his vascular injury and now requires reasonable follow-up care. Because Dr. Lundberg treated Mr. Boyd from the beginning, and because Revel never provided a panel for the vascular condition, the Court finds it appropriated to designate Dr. Lundberg the treating physician.

*Mr. Boyd is **not** entitled to further evaluation of his lumbar strain.*

The Court finds Mr. Boyd credible. As such, it stands to reason that he continues to experience back pain as he testified. However, in regard to the lumbar strain, Revel has

10

complied with the requirements of the law. When Mr. Boyd reported the injury, Revel provided a panel of physicians. Mr. Boyd chose Dr. Waggoner from the panel. Dr. Waggoner evaluated and treated Mr. Boyd. Dr. Waggoner further opined Mr. Boyd reached MMI on March 4, 2015, and had a zero percent permanent impairment rating. This opinion is presumed correct subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(k)(7) (2014). There is no evidence to rebut the opinions of Dr. Waggoner regarding the lumbar strain injury.

The Court also has considered that Mr. Boyd discontinued physical therapy and asked to return to work. He is working full time at regular duty. The lay proof matches the medical proof that Mr. Boyd has completed care for his low back injury. In the absence of countervailing proof to the contrary, this Court cannot disturb Dr. Waggoner's opinions.

*Conclusion*

Mr. Boyd has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on the issues presented regarding his vascular injury, but is not entitled to the requested benefits for the lumbar strain.

**IT IS, THEREFORE, ORDERED** as follows:

1. Revel or its workers' compensation carrier shall provide medical care for Mr. Boyd's vascular condition. Mr. Boyd shall furnish Revel or its workers' compensation carrier medical bills for the treatment to date of the vascular condition and Revel, or its carrier, shall provide Mr. Boyd treatment of the vascular condition from Dr. Lundberg.

2. Mr. Boyd has not, at this stage of the proceedings, shown entitlement to further medical benefits for the lumbar strain injury.

3. This matter is set for Initial Hearing on September 17, 2015, at 3:15 p.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

11

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of August, 2015.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit

12

of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 18th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|-------------------|
| Charles L. Hicks | | | X | Larry_hickslaw@bellsouth.net |
| Jeffery C. Foster | | | X | JFoster@morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov