FILED

September 21, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 8:21 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **TIMOTHY WARREN** | ) | **Docket No.: 2016-05-0285** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 23674-2016** |
| **YATES SERVICES** | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| **TRAVELERS INS.** | ) | |
| **Insurance Carrier/TPA.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the undersigned workers' compensation judge on September 14, 2016, on the Request for Expedited Hearing filed by Timothy Warren, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Warren is entitled to medical treatment and temporary disability benefits for his left arm injury. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Warren is likely to establish at a hearing on the merits he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Warren is likely to meet this burden and is entitled to medical and temporary disability benefits. [1]

### History of Claim

The following facts were established at the Expedited Hearing. Mr. Warren began working for Yates Services in August 2013. He was working at the Nissan engine manufacturing facility in Decherd, Tennessee when he suffered a fall at work on December 22, 2015. He testified he fell and caught himself with his left arm on that date when his heel caught on a pallet. Mr. Warren reported the accident to his supervisor, Gary Reed, who filled out an accident report, gave Mr. Warren some Ibuprofen, and provided light duty for the rest of Ms. Warren's shift. Mr. Reed did not offer Mr. Warren a panel or send him for in-house medical treatment.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

The plant closed the next day for a scheduled winter shutdown. During that time, Mr. Warren sought treatment at Dr. Karen Tidmore's office in Winchester, Tennessee. He saw the nurse practitioner, who prescribed a brace for him to wear on his left hand, wrist, and arm.

Following the shutdown, Mr. Warren returned to work on January 4, 2016. He explained to Mr. Reed that he had gone to the doctor for treatment of his wrist and forearm pain. At the end of Mr. Warren's shift, Mr. Reed took him to see Carlos Shelton, the safety manager. Mr. Shelton provided Mr. Warren a smaller brace, which he instructed Mr. Warren to wear while working.

Yates provided light duty for Mr. Warren, consisting primarily of building collets, a small engine part. Mr. Warren's condition gradually worsened as he performed this light duty work over the next few weeks. On the morning of February 4, 2016, Mr. Warren left work at the end of his shift and went home. As he reached for the screen door of his house, he felt a pop in the inside of his left forearm. He returned to work later the same day and, before beginning his shift, told Mr. Reed what had happened at home. At the end of that shift the next morning, February 5, Mr. Warren went home. However, his arm was hurting so badly that he drove back to the plant to see Mr. Shelton. Mr. Shelton offered no panel or medical treatment, telling Mr. Warren that Yates was not responsible because the injury had occurred at home.

Handwritten statements made by Mr. Reed and Mr. Shelton on February 4th and 5th were admitted into evidence without objection. They both confirm Mr. Warren reported a pop between his wrist and elbow while reaching for a screen door at his home.

Mr. Warren sought additional medical treatment at the emergency room of Unity Medical Center on February 8, 2016. Triage documents state: "First hurt arm at work December 22 and reinjured it Feb 4th c/o pain entire left arm. He denies this is w/c injury at this time." (Ex. 6 at 7.) Mr. Warren testified the providers at Unity referred him to Dr. Jason Haslam at Seven Springs Orthopaedics.

Dr. Haslam saw Mr. Warren on February 10, 2016, for left elbow, forearm, and wrist pain. Mr. Warren described an initial injury at work on December 22 when he tripped over a pallet and fell on his outstretched left arm. Following that incident, he worked light duty, had pain in his wrist and forearm, and wore a brace given to him by his safety manager. A week before seeing Dr. Haslam, Mr. Warren reached out to open a screen door at his home when he "felt and heard a pop in his left elbow region." This resulted in increasing pain, decreased function, and weakness in the left elbow and forearm. Dr. Haslam ordered an MRI and took Mr. Warren off work. *Id*. at 14-16.

On Mr. Warren's return visit, Dr. Haslam noted the MRI showed a full-thickness

2

tear with retraction of the distal biceps tendon. He recommended a surgical repair, which took place on February 22. Mr. Warren continued to follow up with Dr. Haslam for the biceps tendon injury and for continued complaints of wrist pain. At Mr. Warren's last visit on May 3, 2016, Dr. Haslam found the surgical wound had healed and Mr. Warren's wrist pain had improved following an injection. He assigned five-pound lifting restrictions and asked Mr. Warren to return in four weeks. He also stated, "It is my opinion that this is a work-related injury." (*Id*. at 19-33.)

Dr. Haslam's records also include a clinic note dated March 15, 2016, which states:

> Injury which occurred approximately 3 months ago. In my opinion, I believe that greater than 51% of his current symptoms and diagnosis is directly caused from his fall at work. The minor trauma at his home was a final culmination of this particular work injury which was a biceps tendon rupture.

(Ex. 7.)

Mr. Warren testified that he filed for short-term disability benefits under his private insurance when Yates failed to provide temporary disability benefits after his doctors took him off work for this injury. After his disability benefits ended in May, Yates terminated his employment on May 16, 2016. The reason given for his termination was failure to return to work from leave of absence. (Ex. 4.) He would have accepted light duty, but Yates did not offer any before terminating him. Mr. Warren has not worked anywhere since his termination. Because he lost his medical insurance, he cannot afford to return to Dr. Haslam.

Mr. Warren filed a Petition for Benefit Determination on March 31, 2016. Yates subsequently issued a Notice of Denial, the basis of which was, "Claim is denied for no medical evidence of an injury on the left wrist. Left tendon bicep rupture is not primarily work related and did not happen in the course and scope of employment." Yates subsequently prepared a First Report of Injury on April 27, 2016. The parties did not resolve the disputed issues through mediation, so the Mediating Specialist filed a Dispute Certification Notice and Mr. Warren filed a Request for Expedited Hearing.

At the hearing, Mr. Warren asserted he is entitled to medical and temporary disability benefits because he has established all the necessary elements of his claim. There is no evidence controverting his description of the incident and no dispute that he gave prompt notice of his injury. He argued that he has established causation because the only medical proof submitted is Dr. Haslam's opinion that Mr. Warren's condition arose primarily out of his work accident. Mr. Warren requested payment for his past medical treatment and requested that Dr. Haslam be designated his authorized treating physician.

3

He also seeks payment of temporary disability benefits beginning with his last day worked. Further, because his claim was denied after he sent Dr. Haslam's causation opinion to Yates' workers' compensation carrier, he also requested imposition of a 25% penalty pursuant to Tennessee Code Annotated section 50-6-205(b)(3) (2015).

Yates countered that Mr. Warren is not entitled to any workers' compensation benefits. It argued that he cannot meet his burden of proving an injury arising primarily out of his work because, by his own admission, the biceps tendon tear occurred while he was at home. Yates contends the work injury resulted in injuries to Mr. Warren's wrist and forearm, and there is no proof that he injured his biceps tendon at work on December 22, 2016.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Warren need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

To prove a compensable injury, Mr. Warren must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). To do so, he must show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Applying these principles to the facts of this case, the Court holds Mr. Warren appears likely to prove a compensable claim. As noted above, medical proof is required to establish the requisite causal link between an employee's work and their injury. The sole medical opinion submitted is that of Dr. Haslam, who stated, "greater than 51% of his current symptoms and diagnosis is directly caused from his fall at work." In the absence of any conflicting medical evidence, Dr. Haslam's unrebutted opinion would be sufficient at a hearing on the merits for Mr. Warren to meet his burden of proving his biceps tendon injury arose primarily out of and in the course and scope of his employment.

Yates made several arguments against the question of causation, but the Court finds them to be unpersuasive. First, Yates characterized Dr. Haslam's opinion as weak, citing another part of his March 15, 2016 note where he stated, "Given his clinical history and reported fall at work I'm highly suspicious that this may be primarily due to his work-related injury which occurred approximately 3 months ago." Yates argued this statement indicates indecision on the part of Dr. Haslam and militates against the Court accepting his subsequent determination that the tendon injury is compensable. Yates also argued the Court should not accept Dr. Haslam's opinion because he gave no basis or explanation how he reached that opinion.

This argument ignores the fact that, even if the statement referred to by Yates indicated any uncertainty or reservations on the part of Dr. Haslam, he appears to have resolved any such reservations by subsequently issuing a plain and clearly-stated opinion. Yates cited no authority suggesting whether, or to what extent, an unrebutted medical opinion must detail a doctor's methodology in reaching his conclusion. In the absence of such authority, the Court is reluctant to substitute its medical judgment (or Yates') for that of Dr. Haslam. If, as Yates suggests, Dr. Haslam's opinion is weak, it could have sought to depose him about it or provided a contrary medical opinion.

Further, Yates' argument overlooks the rest of Dr. Haslam's note, which states:

> This injury did occur at work approximately 3 months ago. This was apparently reported to his work superiors. He socially [sic] continued to have significant discomfort in the forearm. These discomforts culminated in a rupture of the biceps tendon at home when reaching for a door.

Dr. Haslam also wrote, "The minor trauma at his home was a final culmination of this particular work injury which was a biceps tendon rupture." Thus, contrary to Yates' contention, the Court finds Dr. Haslam provided considerable explanation of how at least 51% of Mr. Warren's injury arose out of his work.

Yates also argued that the work injury and the incident at Mr. Warren's home were separate events because his symptoms were located in different parts of his arm. This argument ignores the fact that the only medical opinion admitted into evidence related these two events to a single injury. Even without that opinion, the other evidence would not support Yates' attempt to characterize the first incident as a wrist injury and the second one as an elbow injury. Mr. Warren's unrebutted testimony was that he had forearm pain following his workplace fall, which he reported to both Mr. Reed and Mr. Shelton. This is consistent with the complaints recorded in the Unity Medical Center records, which refer to pain from "bicep to hand" and "felt pop in forearm."[2] Further, the

---

[2] Yates also argued Mr. Warren "denied this was work-related injury" when he spoke to Unity Medical Center personnel. The intake notice from Unity states, "He denies this is w/c injury at this time." Mr. Warren denied saying his injury was not work-related, but explained he actually told Unity personnel that the injury was not

Court observed during the hearing that Mr. Warren's surgical scar was, in fact, on his forearm.

As Mr. Warren has come forward with sufficient evidence to show he is likely to prevail at a hearing on the merits, the Court must address his request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). "The injured employee shall accept the medical benefits . . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians . . . from which the employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015). However, "an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015); *see also Bond v. Am. Air Filter*, 692 S.W.2d 638 (Tenn. 1985). Moreover, when an employer initially fails to provide a panel of physicians from which an employee might choose a treating physician, then such employer cannot belatedly seek to control selection of the treating physician by the late provision of a panel. *Lambert v. Famous Hospitality, Inc.*, 947 S.W.2d 852 (Tenn. 1997).

It is undisputed that Mr. Warren provided notice of his injury to his supervisor at Yates on the date of his injury. Returning after the plant shutdown, he informed his supervisors of his medical restrictions and continuing problems, which resulted in Yates assigning him a light duty job. However, Yates never provided a panel of physicians, even though the event that led to Yates' denial of the claim did not take place until February 4, 2016. In other words, for over a month before it ever had any reason to deny Mr. Warren's claim, Yates failed to provide a panel. As a result, pursuant to *Lambert*, the Court concludes it is appropriate to designate Dr. Haslam as Mr. Warren's authorized treating physician for future treatment.

Mr. Warren also seeks payment of temporary disability benefits. An injured worker is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). The first record indicating a medical professional taking Mr. Warren off work is Dr. Haslam's note of

covered by workers' compensation because Yates denied coverage. This explanation was unrebutted.

February 10, 2016. Dr. Haslam subsequently performed surgery and none of his records refer to disability until he released Mr. Warren with five-pound lifting restrictions on May 3, 2016.[3] Accordingly, Mr. Warren appears likely to prove he is entitled to temporary total disability benefits for the period of February 10, 2016, through May 2, 2016.[4]

Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, are available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* (citing *Williams v. Saturn Corp*., No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

As noted above, Dr. Haslam released Mr. Warren to light duty with a five-pound lifting restriction on May 3, 2016. Mr. Warren testified he would have accepted light duty from Yates if it had made him an offer. However, he presented no proof that he ever presented Dr. Haslam's restrictions to Yates or gave it an opportunity to make an offer of light duty. In the absence of such proof, the Court cannot find at this time that Mr. Warren is likely to establish entitlement to temporary partial disability benefits.

Finally, Mr. Warren seeks an order imposing a penalty pursuant to Tennessee Code Annotated section 50-6-205(b)(3) (2015), which provides:

> In addition to any other penalty provided by law, if an employer, trust or pool or an employer's insurer fails to pay, or untimely pays, temporary disability benefits within twenty (20) days after the employer has knowledge of any disability that would qualify for benefits under this chapter, a workers' compensation judge shall have the authority to assess against the employer, trust or pool or the employer's insurer a civil penalty in addition to the temporary disability benefits that are due to the employee. The penalty, if assessed, shall be in an amount equal to twenty-five percent (25%) of the temporary disability benefits that were not paid in accordance

---

[3] The Court notes that it is undisputed Mr. Warren was on short-term disability during this time.

[4] The parties did not stipulate a compensation rate, but the wage statement entered into evidence without objection indicates an average weekly wage of $648.97, which yields a compensation rate of $432.65.

with this subsection (b). Furthermore, the penalty may be assessed as to all temporary disability benefits that are determined not to be paid in compliance with this subsection (b).

Mr. Warren may eventually establish entitlement to the requested penalty for unpaid disability benefits, but the Court declines to make that determination at this time. Section 50-6-205(b)(3) specifies that the penalty is only applicable to an employer who has "knowledge of any disability that would qualify for benefits under this chapter." That Yates had knowledge of Mr. Warren's disability is clear, as he provided Yates or its carrier with a copy Dr. Haslam's note. However, because the benefits awarded at this time are based upon a lesser evidentiary standard than a final hearing, it would be premature to conclude that Mr. Warren will, in fact, "qualify for benefits under this chapter." The matter of the requested penalty is more properly an issue for the final compensation hearing of this matter.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Warren's injuries shall be paid and Yates or its workers' compensation carrier shall provide Mr. Warren with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 (2015), including payment of his related medical expenses incurred to date. The Court designates Dr. Haslam as the authorized treating physician for future treatment. Mr. Warren or the medical providers shall furnish medical bills to Yates or its workers' compensation carrier.

2. The amount of temporary disability benefit is $432.65 per week based on Mr. Warren's average weekly wage of $648.97.

3. Yates shall pay past-due temporary total disability benefits in the amount of $5129.99 for the period from February 10, 2016, to May 2, 2016.

4. This matter is set for an Initial (Scheduling) Hearing on October 26, 2016, at 9:30 a.m.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

8

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.


**ENTERED this the 21st day of September, 2016.**


_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims.  You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note:  You must call in on the scheduled date/time to participate.  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.**  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

9

fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof.  A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement.  All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Accident Investigation Report
2. First Report of Injury
3. Notice of Denial of Claim for Compensation
4. Notice of Termination
5. Wage Statement
6. Indexed Medical Records
7. Dr. Haslam's March 15, 2016 chart note
8. Written statements of Gary Reed and Carlos Shelton

Technical record:[5]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 21st day of September, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Zachary Wiley | | | | | x | zwiley@forthepeople.com |
| John R. Rucker, Jr. | | | | | x | jrucker@ruckerlaw.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

12