**FILED**
**Aug 09, 2024**
**01:32 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **RICHARD ADKINS,** | ) | **Docket No. 2023-06-8627** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CODY ALLISON & ASSOCIATES,** | ) | **State File No. 45895-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **HARTFORD FIRE INS. CO.,** | ) | **Judge Joshua Davis Baker** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER
## (DECISION ON THE RECORD)

---

Mr. Adkins requested a decision based on a review of the record without an evidentiary hearing, which Hartford agreed to. Mr. Adkins asked the Court to designate Dr. Schmidt as his treating physician for pain management and order Hartford to reimburse him for all pain management expenses. Hartford did not oppose his request, except to assert that Tennessee Code Annotated section 50-6-204(a)(3)(A)(iii) prohibits reimbursement to Mr. Adkins for any amount he paid to his doctors over the fee schedule.

Because Hartford declined to cover his treatment, the Court designates Dr. Schmidt as the authorized treating physician for pain management. Further, the Court holds the fee schedule is inapplicable here, and Mr. Adkins is entitled to full reimbursement for all pain management expenses.

### Claim History

Mr. Adkins injured his back from lifting a multi-gallon water container at work. His panel-selected physician, Dr. James Fish, surgically repaired his back twice.

After the second surgery, Dr. Fish referred Mr. Adkins to pain management treatment with Dr. Kenneth Sullivan for "a combination of right-sided SI joint dysfunction and residual pain from his previous 2 surgeries at the L1-L2 level."

When Hartford failed to authorize the referral or offer a panel, Mr. Adkins covered his own treatment. First, he treated with Dr. Sullivan, the doctor to whom Dr. Fish had referred him. Without insurance, he paid the doctor personally and in full. After Dr. Sullivan discontinued care, Mr. Adkins asked Hartford for a panel of pain management physicians.

When Hartford still declined to offer a panel, he filed a petition and supported his panel request with opinion letters from Drs. Fish and Sullivan. When asked if the back injury contributed "more than fifty percent (50%) in causing [the] need for pain management[,]" Dr. Sullivan checked "yes." In response to the same question, Dr. Fish also marked "yes."

Hartford refused to give a panel, so Mr. Adkins treated with pain management physician Dr. Alex Schmidt, whom he also paid personally without the use of insurance.

As for out-of-pocket expenses, Dr. Sullivan marked "yes" when asked if the medical bills Mr. Adkins had incurred for pain management were "reasonable, necessary, and directly related to" treatment of his work injury.

In his Rule 72 declaration, Mr. Adkins listed his out-of-pocket expenses. He paid $4,396.01 directly for pain management, and he traveled 145.2 miles for treatment with Dr. Schmidt and 1,817.2 miles for treatment with Dr. Sullivan.

**Findings of Fact and Conclusions of Law**

Mr. Adkins must present sufficient evidence that he is likely to prevail at a final hearing. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

For now, he is seeking only "direct reimbursement" of his pain management expenses and Dr. Schmidt as his treating physician for pain management.

*Designation of Authorized Physician*

Treatment recommendations and referrals by an authorized physician, like Dr. Fish, are presumed medically necessary for treatment of a work injury. Tenn. Code Ann. § 50-6-204(a)(3)(H). Further, when an authorized physician refers an injured worker directly to a specialist physician, like Dr. Fish's referral to Dr. Sullivan, the employer has accepted that referral unless a panel is offered within three business days. *Id.* at -204(a)(3)(A)(ii).

2

Yet Hartford did not authorize the referral or offer a panel, nor has it produced any evidence to overcome the presumption of medical necessity afforded to Dr. Fish's referral and recommendation for pain management. Instead, Hartford denied coverage.

An "employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice[.]" *Barrett v. Lithko Contracting*, 2016 TN Wrk. Comp. App. Bd. LEXIS 93, at *8 (Dec. 8, 2016).

Because Hartford elected to deny coverage rather than offer a panel, Mr. Adkins chose his pain management physician. He first tried to obtain coverage from Hartford before choosing his own doctor. Further, he established treatment with Dr. Schmidt, and that treatment should not be disrupted. For these reasons, the Court holds Mr. Adkins is likely to prevail at a final hearing on the designation of Dr. Schmidt as his authorized physician for pain management.

*Reimbursement of Pain Management Expenses*

The Appeals Board has offered limited guidance on this issue. "An employer who fails to provide a panel of physicians runs the risk of having to pay for unauthorized medical care [if] the trial court determines that a panel should have been provided." *Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016). Moreover, where "the employee has personally paid for the disputed medical treatment, . . . the employer shall reimburse the employee personally." *Acevedo v. Crown Paving, LLC*, 2023 TN Wrk. Comp. App. Bd. LEXIS 7, at *14 (Jan. 27, 2023).

Yet the Board has not been asked the difficult question here. The question is not if Hartford should pay for pain management treatment–or even to whom:  it's how much.

Mr. Adkins argued Hartford waived reduced payment under the medical fee schedule through noncompliance. By contrast, Hartford contended that—no matter the circumstances—it is statutorily prohibited from paying Mr. Adkins any more than the allowed amount under the fee schedule. From Hartford's perspective, Mr. Adkins is obligated to recoup any overpayment directly from his doctors.

Hartford's contention fails to consider three significant sticking points: this Court's authority, equity and fairness, and the appropriate context for the prohibition against paying outside of the fee schedule.

First, this Court has no authority to order doctors to reimburse their patients, nor any mechanism by which to enforce or oversee that reimbursement. Rather, a workers' compensation claim is between an injured worker, his employer, and by extension, its insurer. *Id.* at *9. Second, equity requires that Mr. Adkins should not bear any further burden or expense caused solely by Hartford's noncompliance. The decision to deny him

coverage was intentional, which makes burdening him with chasing his doctors for reimbursement particularly unpalatable. Put simply, he did not create this problem, so it is not his to fix.

Lastly, pain management treatment was not "covered" treatment when Mr. Adkins incurred these expenses. The Appeals Board has observed that "employers are prohibited from paying any medical bill for *a covered injury* outside the fee schedule[.]" *Bragg v. Premium Servs., LLC*, 2023 TN Wrk. Comp. App. Bd. LEXIS 36, at *18 (Aug. 1, 2023) (quoting Tenn. Comp. R. & Regs. 0800-02-18-.15(1)) (emphasis added).

Even so, in *Bragg*, the Board affirmed a trial court's order for reimbursement to an injured worker's private health insurer–only for the amount due under the fee schedule–for expenses *not covered* by workers' compensation when paid.

In doing so, *Bragg* focused on the word *shall* from section 50-6-204(a)(3)(A)(iii), which imposes application of the fee schedule without using the word *covered* like in Rule 0800-02-18-.15(1). Instead, the statute simply instructs that an employer's liability for services "*shall* be limited to the maximum allowable fees" under the fee schedule. Tenn. Code Ann. § 50-6-204(a)(3)(A)(iii) (emphasis added).

However, context here is key. The mandatory language in -204(a)(3)(A)(iii) immediately follows two other requirements: -204(a)(3)(A)(i), which requires an employer to offer a panel when an injured worker expresses a need for treatment of a work injury, and -204(a)(3)(A)(ii), which requires an employer to either accept a direct referral for a covered injury or offer a panel within three business days.

In other words, the two requirements immediately preceding -204(a)(3)(A)(iii) concern *covered* treatment. Hartford chose not to cover pain management treatment when Mr. Adkins paid these expenses. Mr. Adkins would not have had these expenses if Hartford had covered the treatment. Rather, Hartford would have paid his doctors directly under the fee schedule, as the legislature intended.

But here, Hartford chose not to offer coverage as directed under -204(a)(3)(A)(ii) when Dr. Fish made his direct referral. It also chose not to offer coverage as directed under -204(a)(3)(A)(i) when Mr. Adkins needed a panel after Dr. Sullivan stopped treating him.

Logically, the legislature would not intend that an employer cherry-pick one statutory requirement to follow—and retroactively at that—while flouting the remaining two. In fact, nothing in the statute suggests this requirement deserves retroactive application.

To be clear, Hartford's noncompliance is not even the pivotal piece in this puzzle. For example, even if overwhelming evidence supports an employer's choice to deny

coverage, it is still a choice with inherent risks and consequences. However, if facts unfold as intended by -204(a)(3)(A), then an employee would ask for care, like Mr. Adkins did, and an employer would take certain steps to cover that care, culminating in payment of expenses under the fee schedule.

Rather than noncompliance, the pivotal piece here is *coverage* and the choice to deny coverage (in an employer's case) or to refuse coverage (in an employee's case). If Mr. Adkins had refused coverage by not asking for care or refusing to choose from a panel, then he would be liable for these expenses. *See Buchanan v. Mission Ins. Co.*, 713 S.W.2d 654, 658 (Tenn. 1986) ("An employee may be liable, however, for medical expenses incurred without consulting the employer.").

Again, statutory structure and context for the word *shall* in -204(a)(3)(A)(iii), paired with the direct and ordinary wording of *covered injury* in Rule 0800-02-18-.15(1), suggest the fee schedule applies to *covered* treatment – without retroactive application.

Additionally, Mr. Adkins's circumstances are somewhat distinguishable from those in *Bragg*, as he has incurred these expenses without the benefit of a private health insurer to shoulder the costs or to recoup the amount paid in excess of the fee schedule.

Given the limited reach of this Court's authority, consideration of equity and fairness, along with the context of the word *shall* in -204(a)(3)(A)(iii), the Court holds the medical fee schedule is not applicable here. Hartford must reimburse Mr. Adkins directly and in full for expenses and mileage he incurred for his pain management treatment.

Finally, the Court finds that Hartford ignored its legal obligations under both -204(a)(3)(A)(i) and (ii) when: 1) it declined to either accept Dr. Fish's referral or to provide a panel within three business days; and 2) when it declined to offer a panel after Mr. Adkins had expressed a need for pain management care after the discontinuation of Dr. Sullivan's treatment.

Therefore, the Court refers Hartford to the Compliance Program of the Bureau of Workers' Compensation for appropriate action under section 50-6-118(a)(8) and (9) (2023) based on its failure to cover treatment and provide a panel of pain management physicians as required by the Workers' Compensation Law.

**IT IS ORDERED**:

1. Hartford shall provide pain management treatment with Dr. Alex Schmidt as the authorized treating physician.

2. Hartford shall reimburse Mr. Adkins for the $4,396.01 he spent on pain management treatment and pay his mileage.

3. The Court refers Hartford to the Compliance Program of the Bureau of Workers' Compensation for appropriate action based on its failure to provide medical treatment and to provide a panel as required under section 50-6-204(a)(3)(A)(i) and (ii).

4. The Court sets a status hearing on **Monday, November 18, 2024, at 10:00 a.m. (CST).** The parties must call (615) 741-2113 or (855) 874-0474 to participate. Failure to call might result in determination of the issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov

**ENTERED August 9, 2024.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as shown on August 9, 2024.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Richard House, Employee's attorney | | | X | richard@richardhouselaw.com |
| L. Blair Cannon, Employer's attorney | | | X | l.blair.cannon@thehartford.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*